OLD DOMINION COMPANY *vs.* COMMONWEALTH.

Suffolk. October 22, 1920. — January 11, 1921.

Present: RUGG, C. J., DE COURCY, CARROLL, & JENNEY, JJ.

*Tax,* Abatement, Excise on foreign corporation. *Corporation,* Foreign. *Evidence,* Presumptions and burden of proof. *Equity Pleading and Practice,* Petition under St. 1909, c. 490, Part III, § 70.

By St. 1909, c. 490, Part III, §§ 54–56, no excise tax upon a foreign corporation is assessed or becomes due and payable by such a corporation until the certificate of condition of the corporation is presented to the Commissioner of Corporations, and no certificate of condition can be placed on file by the Secretary of the Commonwealth until it has been approved by the Commissioner of Corporations as in conformity to law and he as Tax Commissioner has assessed the excise tax and that tax has been actually paid to the Treasurer and Receiver General.

In a petition by a foreign corporation under St. 1909, c. 490, Part III, § 70, for the abatement of an excise tax assessed in 1918, it was alleged that the petitioner paid to the Treasurer and Receiver General on April 30, 1918, an excise tax "which had then been assessed by the Tax Commissioner," and which "purported to be made under the provisions" of §§ 54–56 of the statute as amended by St. 1914, c. 724; that the annual meeting of the corporation was held on January 30, 1918, and was finally adjourned on that day, and that the thirty days provided by § 54 of the statute for the filing of the corporation's certificate of condition expired on March 2, 1918, sixteen days before the enactment on March 18 of St. 1918, c. 76, repealing St. 1914, c. 724. The petitioner contended that it did not become liable for any tax in 1918. At the hearing, the facts as alleged were agreed to. *Held,* that

(1) There was no allegation that the certificate of condition was approved and that the excise was assessed by the Tax Commissioner on any day previous to that on which the tax was paid;

(2) No intendment could be made in favor of the petitioner in that particular;

(3) The petitioner could not avail itself of any presumption of the regularity of its conduct or compliance with the law arising from the circumstance that by § 54 of the statute, it was required to file its certificate within thirty days after its annual meeting;

(4) The case must be considered on the footing that the assessment was made on April 30, 1918;

(5) It was immaterial whether the petitioner's certificate of condition was offered to the Commissioner after the institution of proceedings under §§ 58, 59 of the statute, or without such proceedings being resorted to;

(6) St. 1909, c. 490, Part III, § 56, which was the excise tax provision in effect on April 30, 1918 (the amendment contained in St. 1914, c. 724, having been repealed by St. 1918, c. 76, on March 18), was valid;

(7) The excise tax in question was assessed under St. 1909, c. 490, Part III, § 56, and was valid.

In the petition above described it appeared that the petitioner was incorporated under the laws of the State of Maine and had its principal office in that State, where it held its stockholders' meetings and kept its records. It operated mining and smelting properties in Arizona. The president and a majority of the directors of the corporation were residents of the State of New York. No directors' meetings were held in Massachusetts, nor were purchases of materials for conducting its operations and the sales of its products made in this Commonwealth. It maintained an office at Boston, its vice-president, who was a director, and its treasurer were residents of this Commonwealth, and a bank account (not for investment) was kept in Boston, checks upon which were signed by the treasurer in Boston and payments from which were made in part directly to creditors and in part by remittances to its managers in Arizona, who there disbursed them. Dividends to stockholders were paid by checks of the treasurer drawn in Boston. General books of account were kept under the direction of the treasurer in the Boston office and detail books of account were kept in the State of Arizona. *Held,* that the financial headquarters of the petitioner were at Boston, that therefore the petitioner was performing in the Commonwealth corporate functions which were local in their nature and were not interstate or foreign commerce; and that it was subject to the excise tax under § 56 of the statute.

PETITION, filed in the Supreme Judicial Court under St. 1909, c. 490, Part III, § 70, on September 24, 1918, and amended on January 2, 1919, by a foreign corporation for abatement of an excise tax.

The material allegations of the petition were in substance as follows:

"1. The petitioner is a corporation organized in January, 1904, under the laws of the State of Maine, and has its principal office,

at which it holds its stockholders' meetings and keeps its records, in Portland, in the State of Maine, and it has an office in Boston and it has its only works, namely, mining and smelting properties, in the State of Arizona.

"2. The petitioner on April 30, 1918, paid to the Treasurer and Receiver General of the Commonwealth for the use of the Commonwealth an excise tax, 'which had then been assessed by the tax commissioner,' of one fiftieth of one per cent of the par value of its authorized capital stock, namely, $8,750,000, namely the sum of $1,750 which assessment 'purported to be made under the provisions' of St. 1909, c. 490, Part III, §§ 54–56, as amended by St. 1914, c. 724.

"3. Said corporation, the petitioner, from its organization in 1904 until February, 1917, was the holder of about ninety-six per cent of the capital stock of the Old Dominion Copper Mining and Smelting Company, a corporation duly organized under the laws of the State of New Jersey and the petitioner was also the holder of all of the capital stock of the United Globe Mines, a corporation duly organized under the laws of the State of New York and the petitioner had and did no other business.

"4. Between February 12, 1917, and April 1, 1917, the Old Dominion Copper Mining and Smelting Company transferred all its assets to the petitioner and the United Globe Mines transferred all its assets, except one mining claim, to the petitioner.

"5. Continuously since April 1, 1917, the petitioner has been engaged exclusively in the business of owning and operating mining and smelting properties and works in the State of Arizona.

"6. The petitioner's entire business since its organization has consisted exclusively of interstate and foreign commerce and it has done no business except such interstate and foreign commerce in the Commonwealth of Massachusetts.

"7. The petitioner has never held any stockholders' or directors' meeting in the Commonwealth of Massachusetts. At all times since its organization, the president of the corporation has been a resident of the State of New York, the clerk a resident of the State of Maine, a majority of the directors residents of the State of New York, the vice-president a resident of Massachusetts, the treasurer a resident of Massachusetts. During the years 1914 and 1915 the only directors resident of Massachusetts were the

vice-president and the treasurer, and during 1916, 1917, 1918, the only director resident of Massachusetts was the vice-president.

"8. The mining and smelting operations of the petitioner and of the Old Dominion Copper Mining and Smelting Company and of the United Globe Mines have been conducted exclusively in the State of Arizona. The purchases of supplies and whatever was requisite for conducting these operations had been made by the manager, resident in Arizona, or by those acting for the company in New York, and such purchases have not been made in the Commonwealth of Massachusetts. The product of the petitioner and of the Old Dominion Copper Mining and Smelting Company and United Globe Mines has been sold by selling agents resident in New York appointed by negotiations conducted and contracts made in New York, and none of this has been done in the Commonwealth of Massachusetts. A bank account has been kept by the petitioner in a Boston bank and checks upon it have been signed by the treasurer in Boston. This bank account has not been kept for investment purposes or for any purpose except to carry on the interstate and foreign commerce above described and as incidental thereto. Payments from this account have been made in part directly to creditors and in part by remittances to the manager of the petitioner's operations in Arizona, and by him there disbursed. Dividends to stockholders have been paid by checks of the treasurer drawn in Boston to pay dividends declared by the board of directors at their meetings in New York.

"9. The statute aforesaid, if applied to this petitioner, was during all the time aforesaid and is a statute imposing a tax upon interstate and foreign commerce and is contrary to the Constitution of the United States and to art. 1, § 8, thereof.

"10. The petitioner was ignorant of this fact when it made the" payment of the tax.on April 30, 1918.

"11. The annual meeting of said corporation, the petitioner, in the year 1918 was held on January 30, and was finally adjourned on that day, and the thirty days provided by St. 1909, c. 490, Part III, § 54, expired on March 2, 1918, and sixteen days before the enactment of St. 1918, c. 76, on March 18, 1918, and the petitioner did not become liable for any tax in that year."

The petition was heard by *Crosby,* J., upon an agreed statement "that the facts are as set forth in the petition as amended, and in

addition thereto that the general books of account of the petitioner corporation were at the times in question kept under the direction of the treasurer at the Boston office, and that the detail books of account were kept at the office of the petitioner corporation in the office of the corporation at Globe, Arizona."

By order of the judge, a final decree was entered dismissing the bill without costs. The petitioner appealed.

*E. F. McClennen*, for the petitioner.

*E. H. Abbot, Jr.*, Assistant Attorney General, for the Commonwealth.

RUGG, C. J. This is a petition filed on September 24, 1918, by a foreign corporation to recover excises assessed and paid by it under the general tax act, St. 1909, c. 490, Part III, § 56.

It is settled by *Lever Brothers Co.* v. *Commonwealth*, 232 Mass. 22, decided since this proceeding was instituted, that the petition so far as it concerns recovery of excises paid in 1915, 1916 and 1917, cannot be maintained. The petitioner has not argued to the contrary.

The questions presented relate to the excise of 1918. The pertinent facts respecting that are that the annual meeting of the petitioning corporation was held on January 30, 1918, and was finally adjourned on that day, and the excise here sought to be recovered was paid to the Treasurer and Receiver General on April 30, 1918. It is provided by § 54, Part III, of the tax act that "Every foreign corporation shall annually, within thirty days after the date fixed for its annual meeting, or within thirty days after the final adjournment of said meeting, but not more than three months after the date so fixed for said meeting, prepare and file in the office of the Secretary of the Commonwealth . . . a certificate . . . showing the amount of its authorized capital stock, and its assets and liabilities. . . ." By § 55 it is provided that the certificate required by § 54 must first be "submitted to the commissioner of corporations, who shall examine said certificate and shall as Tax Commissioner assess upon the corporation an excise tax in accordance with the provisions of the following section. If he finds that the certificate is in compliance with the requirements of the preceding section, he shall indorse his approval thereon; but no certificate shall be filed until he has indorsed his approval thereon, and until the excise tax required by

the following section has been paid to the Treasurer and Receiver General." By § 56 "Every foreign corporation shall, in each year, at the time of filing its annual certificate of condition, pay to the Treasurer and Receiver General" the excise as assessed by the Tax Commissioner. The force and effect of these three sections of the tax act are that no excise tax is assessed or becomes due and payable until the certificate of condition is presented to the Tax Commissioner, and no certificate of condition can be filed until it has been approved by the Tax Commissioner as in conformity to law. and the excise tax by him assessed actually paid to the Treasurer and Receiver General. The thirty days after the annual meeting, although the time within which the certificate ought to be filed, is not the decisive date. The excise cannot be assessed until the certificate of condition is presented to the Tax Commissioner. That certificate contains information essentially prerequisite to the assessment of the excise. If the certificate is not seasonably presented to the Tax Commissioner, no excise can be assessed. The delinquent corporation can only be dealt with under §§ 58 and 59. Those two sections provide for penalties for failure to file the certificate, but do not authorize any assessment of excise. This excise tax law is materially different in this particular from the property tax law which fixes a definite date for the assessment. See St. 1914, c. 198, § 1.

Since the excise tax cannot be assessed until the certificate is presented to the Tax Commissioner, nor filed until the tax is paid, its validity must be determined by the law as it stands on the date of the assessment. It is alleged in the petition that the annual meeting was held and adjourned finally on January 30, 1918, and that the tax was paid on April 30, 1918. There is no allegation that the certificate was approved and the excise assessed by the Tax Commissioner at a time before the tax was paid. Of course no intendment can be made in favor of the petitioner in that particular. *Bowker* v. *Torrey*, 211 Mass. 282, 286. *Eldredge* v. *Mutual Life Ins. Co. of New York*, 217 Mass. 444. *Second Society of Universalists in the Town of Boston* v. *Royal Ins. Co. Ltd.* 221 Mass. 518. *Hayden* v. *Perfection Cooler Co.* 227 Mass. 589, 592. So far as any inference is permissible it would be to the effect that the assessment is made when the excise is paid. *Lawton Spinning Co.* v. *Commonwealth*, 232 Mass. 28. The peti-

tioner cannot avail itself of any presumption of the regularity of its conduct or compliance with the law arising from the circumstance that by § 54 (see § 58) it was required to file its certificate within thirty days after its annual meeting, for the reason that it could not by the express terms of §§ 55 and 56 file its certificate until after approval by the Tax Commissioner and must at the same time pay the excise, and by the averments of the petition the excise was not paid until April 30, 1918. The case must be considered on the footing that the assessment was made on April 30, 1918. The validity of the excise must be determined as of that day.

It does not appear whether proceedings had been begun against the petitioner under §§ 58, 59, or whether the officers of the State merely accepted the certificate when offered for filing by the petitioner. But that is of no consequence in this connection. In either event the petitioner is bound by the law when the assessment was made on April 30, 1918.

If the excise tax law is valid when the excise is assessed and the excise is assessed according to the law at that time, it is a valid tax. Previous infirmities in the law, if removed before that time, are of no consequence in determining the validity of the excise.

The excise tax law on foreign corporations in force on April 30, 1918, was St. 1909, c. 490, Part III, § 56. That statute is not violative of any provision of the State or Federal Constitutions. It was so decided in *Baltic Mining Co.* v. *Commonwealth*, 207 Mass. 381, and *S. S. White Dental Manuf. Co.* v. *Commonwealth*, 212 Mass. 35, both affirmed in *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68.

The validity of § 56 is not in any particular impaired by St. 1914, c. 724, so far as concerns the case at bar, because the latter statute was repealed by St. 1918, c. 76, which took effect on March 18, 1918, several weeks before the assessment of the present excise. That was decided as an interpretation of the meaning and a construction of the statutes of this Commonwealth by *Lawton Spinning Co.* v. *Commonwealth*, 232 Mass. 28, which is authoritative upon this point. Its reasoning need not be repeated.

This point appears to us to be quite outside the scope of the decisions in *International Paper Co.* v. *Massachusetts*, 246 U. S. 135, and *Locomobile Co. of America* v. *Massachusetts*, 246 U. S.

146, which were decided before the enactment of St. 1918, c. 76, and when St. 1914, c. 724, was unrepealed.

So far as the construction and interpretation of the statutes of this Commonwealth are within our jurisdiction, it was expressly decided in *Lawton Spinning Co.* v. *Commonwealth,* 232 Mass. 28, that § 56 and St. 1914, c. 724, were separable and that there was no such connection between the valid § 56 and the invalid St. 1914, c. 724, as to prevent the validity of § 56 standing alone, even if there had been no repeal of St. 1914, c. 724. That decision was based upon a fundamental principle of jurisprudence of this Commonwealth, and that same principle seems to us to be recognized and reiterated in *International Textbook Co.* v. *Pigg,* 217 U. S. 91, 113. See *Liquid Carbonic Co.* v. *Commonwealth,* 232 Mass. 19. The tax in the case at bar was assessed wholly under the provisions of § 56 and not in any particular under St. 1914, c. 724.

It remains to determine whether the petitioner was so engaged in local business in this Commonwealth as to be subject to the excise. The allegations in the bill to the effect that the petitioner was engaged in this Commonwealth exclusively in interstate or foreign commerce and other general averments of that nature were treated at the bar as allegations of law and not of fact. The case was argued and must be considered on the footing that only the specific facts set forth in the petition are agreed to be true.

If a foreign corporation is engaged exclusively in interstate commerce, it is not subject to the excise. *Marconi Wireless Telegraph Co. of America* v. *Commonwealth,* 218 Mass. 558, and cases there collected.

The pertinent agreed facts are that the petitioner, incorporated under the laws of the State of Maine, there had its principal office at which it held its stockholders' meetings, and kept its records. The other agreed facts show, however, that this was the usual instance of a corporation having its domicil only in one State while all its substantial corporate activities were carried on in other States. From its organization in 1904 until February, 1917, the petitioner was the holder of about ninety-six per cent of the capital stock of the Old Dominion Copper Mining and Smelting Company, a New Jersey corporation, and of the United Globe Mines, a New York corporation, and it had and did no other business.

Between February 12, 1917, and April 1, 1917, these corporations transferred substantially all their assets to the petitioner, which henceforward engaged actively in mining operations. It was an operating company and its mining and smelting properties were in the State of Arizona. The president of the corporation and a majority of its board of directors were residents of New York. Its directors' meetings have not been held in Massachusetts and some of them have been held in New York. Purchases of materials for conducting its operations and sales of its products have not been made in Massachusetts. The company maintained an office within this Commonwealth and its vice-president, who also was a director, and its treasurer, were residents here. A bank account (not for investment) has been kept in Boston and checks upon it have been signed by the treasurer in Boston. Payments from this account have been made in part directly to creditors and in part by remittances to its manager in Arizona, who there disbursed them. Dividends to stockholders have been paid by checks of the treasurer drawn in Boston. The general books of account of the petitioning corporation were at the times in question kept under the direction of the treasurer at its Boston office, and the detail books of account at Globe in the State of Arizona. There is nothing to indicate that payments have not been made to its creditors resident in Massachusetts or that the stockholders to whom dividends are paid do not reside in this Commonwealth. The keeping of the general books of account of the corporation of necessity must include a record of all its business and financial transactions of every kind.

Manifestly the financial headquarters of the petitioner were at Boston. Its financial transactions must very largely, if not exclusively, be conducted and its financial records made and kept at the Boston office. These are inseparable from the duties of treasurer when the general disbursements and the payment of dividends are made by him from his Boston office. These are corporate functions which are local in their nature. They are not interstate or foreign commerce. They are activities of the corporation which have no direct relation to interstate or foreign commerce and can be conducted at the particular place selected by the corporation. They are quite independent of the character or extent of its interstate or foreign commerce and of the States

or nations between which that may move and be carried on. The financial business of the corporation conducted at its Boston office is vital to the existence of the corporation. In its essence it is incident to its treasurer's office and hence local to Massachusetts where that is located. The case upon this point comes within the words of *Pembina Consolidated Silver Mining & Milling Co.* v. *Pennsylvania,* 125 U. S. 181, at page 184: that the excise tax law "only exacts a license tax from the corporation when it has an office in the Commonwealth for the use of its officers, stockholders, agents, or employés. . . . The exaction of a license fee to enable the corporation to have an office for that purpose within the Commonwealth is clearly within the competency of its Legislature." Although there was slightly more of local business as basis for the excise in *Copper Range Co.* v. *Commonwealth,* and *Champion Copper Co.* v. *Commonwealth,* 218 Mass. 558, 576–579, both affirmed in *Cheney Brothers Co.* v. *Massachusetts,* 246 U. S. 147, than in the case at bar, nevertheless we think the principle of those cases governs the present case. The case at bar thus is distinguishable from *Pocahontas Fuel Co.* v. *Commonwealth,* 218 Mass. 558, 568, 569, and cases there collected, and the first case adjudicated in *Cheney Brothers Co.* v. *Massachusetts, supra.* The keeping of the treasurer's books of account and the general books of account of the corporation, and the payment of corporate debts and dividends from a local bank account to creditors and stockholders, together with the other facts of a local nature, appear to us to be sufficient to warrant the exaction of an excise as upon a business local, and not exclusively interstate, in its nature.

*Petition dismissed with costs.*