JUDSON FREIGHT FORWARDING COMPANY *vs.* COMMONWEALTH.

Suffolk.    November 30, 1921. — June 28, 1922.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Tax,* Excise. *Statute,* Construction. *Corporation,* Foreign. *Constitutional Law.* Taxation, Interstate Commerce. *Evidence,* Presumptions and burden of proof.

The tax imposed upon a foreign corporation by St. 1919, c. 355, §§ 14–22, as amended by St. 1920, c. 549, now G. L. c. 63, §§ 39–43, is an excise for the commodity or privilege of having a place of business in Massachusetts with the protection of our laws and the financial, commercial and other advantages appertaining thereto.

A declared purpose of the Legislature is accepted unless inconsistent with the meaning and effect of the enactment.

St. 1919, c. 355, §§ 14–22, as amended by St. 1920, c. 549 (see now G. L. c. 63, §§ 39–43), imposing an excise upon foreign corporations was a legislative attempt to avoid preference hitherto existing in favor of foreign corporations.

St. 1919, c. 355, §§ 14–22, as amended by St. 1920, c. 549 (see now G. L. c. 63, §§ 39–43), in its general operation as to foreign corporations subject to an excise tax violates no guaranty of the Federal Constitution.

A corporation, organized under the laws of Illinois, maintained offices in the leading cities of the United States including Boston with a manager and adequate force of employees in each office, and was engaged in the business of forwarding goods, chiefly household goods, by freight in carload lots between the various cities in which it had offices. It acted as a shipping agent and was not a carrier. If desired, acting as agent, it attended to collecting, packing, storing and insuring the goods, while awaiting in its "assembling station" the accumulation of carload lots, and to the distribution of goods received from its other offices, but it did so through an independent contractor and charged the shipper for disbursements only. It made no intrastate shipments in Massachusetts except and unless as above described. Upon a petition for the abatement of excise taxes levied upon it under St. 1919, c. 355, and St. 1920, cc. 550, 600, which was reserved for this court upon the pleadings and an agreed statement of facts, it was *held,* that

(1) The burden of proof was upon the petitioner to make out its right as matter of law to abatement of the tax and no intendment as to evidence could be made in its favor beyond what was shown in the record;

(2) The service of engaging packers to pack the goods of customers and truckmen to transport goods to a warehouse and the procuring of insurance upon the goods, although done as an accommodation and without direct compensation, was none the less a doing of business;

(3) Even if it be assumed that the service thus rendered by the petitioner with respect to shipments made from its offices in other States to it in Boston was interstate commerce, it is plain that the service thus rendered in Massachusetts in the collection and storage and insurance of goods to be shipped to its offices in other States was local or intrastate business;

(4) The holding of the goods of customers in a warehouse in its name, acting as an agent for its customers, while awaiting the accumulation of carload lots for transportation constituted the doing of intrastate business;

(5) The business done by the petitioner with respect to the goods of its customers before the actual delivery of them to a common carrier for transportation in interstate commerce was domestic and not interstate in nature;

(6) The circumstance that the petitioner made no direct profit out of its Massachusetts business in this connection was immaterial;

(7) The petitioner could not avoid responsibility to local laws for local business by so gauging its charges as to allocate its profit wholly to its interstate business;

(8) Since the petitioner was conducting a substantial intrastate business, the Commonwealth could lawfully levy an excise tax;

(9) *Whether* the statute would be void in its application to foreign corporations, engaged in this Commonwealth exclusively in interstate or foreign commerce, it was not necessary to decide.

PETITION, filed in the Supreme Judicial Court on April 12, 1921, under G. L. c. 63, § 77, for the abatement of excise taxes levied under St. 1919, c. 355, and St. 1920, cc. 550, 600, upon the petitioner, a corporation organized under the laws of Illinois, and paid under protest.

The case came on to be heard before *Pierce*, J., and at the request of the petitioner was reserved by him on the petition, answer and agreed facts, which are described in the opinion, for determination by the full court.

St. 1919, c. 355, provided as follows:

"Section 15.   Every foreign corporation shall pay annually, with respect to the carrying on or doing of business by it within the commonwealth, an excise equal to the sum of the following: —

" (1) An amount equal to five dollars per thousand upon the value of the corporate excess employed by it within the Commonwealth.   The term 'corporate excess' within the Commonwealth shall mean such proportion of the value of the issued capital stock

as the assets, both real and personal, employed in any business within the Commonwealth on the first day of April following the close of the taxable year, bear to the total of such assets of the corporation on said date, less the following deductions: — (a) the value of the works, structures, real estate, machinery, poles, underground conduits, wires and pipes owned by it within the Commonwealth subject to local taxation, except such part of the said real estate as represents the interest of a mortgagee; (b) the value of securities held in Massachusetts, other than shares in national banks, voluntary associations, trusts and partnerships, the income of which, if any, if received by a natural person resident in this Commonwealth, would not be liable to taxation. . . .

"(2) An amount equal to two and one half per cent of that part of its net income as hereinafter defined, which is derived from business carried on within the Commonwealth. . . ."

"Section 16. Except as provided in the last paragraph of section two, the term 'net income' shall mean the net income for the taxable year as required to be reported by the corporation in its last prior return to the federal government as defined in the federal revenue act of nineteen hundred and eighteen, deducting therefrom all interest received upon bonds, notes and certificates of indebtedness of the United States which was included in such return, and dividends received from corporations organized under the laws of this Commonwealth and from corporations or associations, partnerships and trusts having transferable shares the dividends upon which would be exempt if received by an inhabitant of this Commonwealth."

St. 1909, c. 490, Part III, § 56, provided as follows:

"Every foreign corporation shall, in each year, at the time of filing its annual certificate of condition, pay to the treasurer and receiver general, for the use of the Commonwealth, an excise tax to be assessed by the tax commissioner of one fiftieth of one per cent of the par value of its authorized capital stock as stated in its annual certificate of condition; but the amount of such excise tax shall not in any one year exceed the sum of two thousand dollars."

*C. S. Tilden,* for the petitioner.

*A. Lincoln,* Assistant Attorney General, for the Commonwealth.

*R. G. Dodge & H. S. Davis,* were permitted to file a brief as *amici curiae,* representing corporations interested in similar cases.

RUGG, C. J.   This is a petition under G. L. c. 63, § 77, for abatement of a tax paid under protest by a corporation organized under the laws of the State of Illinois.   The petitioner has offices in Boston and other leading cities in the United States.   It maintains in Boston an office with a manager and necessary employees. It has a bank account in Boston subject to check of the local manager.   It has no warehouse or transportation facilities and does not itself cart or store goods.   The business done at the Boston office is the shipment of goods to and the distribution of goods received from its other offices.   Some goods received for shipment are delivered to it packed.   The petitioner, if desired by its customers, also arranges with independent contractors to pack, collect and deliver goods to a warehouse to be stored in the name of the petitioner.   When a carload of goods has been accumulated the petitioner ships the carload to its office in the city where the goods are to be delivered.   On arrival there the goods are delivered upon presentation of a receipt previously issued by the petitioner and payment of charges.   In like manner delivery is made in Boston of goods shipped to the petitioner there from its other offices. In the collection and distribution of goods in Boston the petitioner pays the bills for the shipper of packing, delivery, insurance, storage and cartage when this is not done by the shipper, acting in this particular as the agent of the shipper, securing independent contractors to do the work, making no direct profit on the transaction and collecting from the shipper the exact amount paid. This is done as matter of accommodation to its customer to secure the business.   The petitioner makes its profit from the substantial difference in freight rate obtained by shipping in carload lots, being able thus to give a lower rate to its several customers than they could obtain shipping separately, and at the same time to have a margin for profit.   The petitioner issues to each of its customers a receipt for goods delivered to it for shipment, which is the contract between the two.   One of its conditions is "That to enable the Judson Co. to make reduced rate for the Shipper, goods may be held at Judson Co.'s Assembling Station to complete carload lot to destination or distributing point, but that no charge for storage is to be made against Shipper during that time." Another condition of the contract is "That the Judson Co. is to act only as Agent for the Shipper and not as a Common Carrier."

The plaintiff in two other places in this contract is described as "Shipper's Agent" and in still other clauses as "Agent for Shipper." Upon the receipt issued by the petitioner to its customer, beside the blank for "freight charges" are separate headings left blank for charges as follows: "Freight to Judson F. F. Co.'s Loading Point," "Cartage," "Storage," "Insurance," "Other Charges." The petitioner makes no shipment of goods from one place to another within the Commonwealth except and unless as above described.

Every corporation chartered under laws other than those of this Commonwealth for the purposes for which domestic corporations may be organized under our laws, not including public service and other excepted classes of corporations, "which has a usual place of business in this Commonwealth, or is engaged here, permanently or temporarily" in construction work, comes within the definition of foreign corporation in the act and is made subject to the excise, conforming in this particular to the provisions of earlier foreign corporation tax laws. St. 1919, c. 355, § 14. G. L. c. 63, § 30, cl. 2. See St. 1903, c. 437, §§ 56, 57; St. 1905, c. 242; St. 1909, c. 490, Part III, § 39; *Baltic Mining Co.* v. *Commonwealth,* 207 Mass. 381, 386.

The tax here in question was levied under St. 1919, c. 355, §§ 14 to 22, as amended by St. 1920, c. 549 (see now G. L. c. 63, §§ 39 to 43) and St. 1920, cc. 550, 600. This tax in its nature is an excise and not a property tax. It is named an "excise" in the statute. The declared purpose of the Legislature is accepted unless inconsistent with the meaning and effect of the enactment. *S. S. White Dental Manuf. Co.* v. *Commonwealth,* 212 Mass. 35, 40. It is levied in "respect to the carrying on or doing of business by it within the Commonwealth." It is an excise for the commodity or privilege of having a place of business in Massachusetts with the protection of our laws and the financial, commercial and other advantages appertaining thereto. *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239, 240.

The amount of the excise is measured by the sum of a percentage on "the value of the corporate excess employed by it in the Commonwealth," and a percentage on its "net income" derived from business carried on within the Commonwealth. The "corporate excess" employed by the foreign corporation within the Common-

wealth means "such proportion of the value of the issued capital stock as the assets, both real and personal, employed in any business within the Commonwealth on the first day of April following the close of the taxable year, bear to the total of such assets of the corporation on said date," less deductions for the value, in general, of real estate within the Commonwealth subject to local taxation and the value of securities the income of which would not be liable to taxation if owned by a natural person resident in the Commonwealth. St. 1919, c. 355, § 15 (see now G. L. c. 63, § 30, cl. 4). Tangible personal property aside from machinery used in manufacture is exempt from taxation. St. 1919, c. 355, § 27 (see now G. L. c. 59, § 5, cl. 16). "Net income" means the net income for the taxable year as required to be reported by the corporation in its last prior return to the federal government. St. 1919, c. 355, § 16 (see now G. L. c. 63, § 30, cl. 5).

In a general way it may be said that this statute, which is a considerable departure from earlier corporation tax laws of this Commonwealth, measures the excise required of foreign corporations by a combination of two percentages, one based on the portion of its property fairly attributable to Massachusetts business except real estate and machinery which alone are subject to a local property tax, and the other on the proportion of its net income attributable to Massachusetts business. In its essentials the present statute puts foreign and domestic corporations upon the same footing in respect to a tax upon the privilege of doing business. Compare Part I with Part II of St. 1919, c. 355, and G. L. c. 63, §§ 32 to 38, with §§ 39 to 43. It is a legislative attempt to avoid preferences hitherto existing in favor of foreign corporations. See *S. S. White Dental Manuf. Co.* v. *Commonwealth,* 212 Mass. 35, 48, 49. As stated in the report of the Joint Special Committee on Taxation of 1919 (whose report formed the basis of the statute here under consideration and to which resort may be had concerning its meaning, *Old South Association in Boston* v. *Boston,* 212 Mass. 299) "We believe that so far as possible foreign corporations should be taxed like domestic." Senate Doc. No. 313 for 1919, page 39.

It seems to us to require no discussion to demonstrate that this act, in its general operation as to foreign corporations subject to an excise tax, violates no guaranty of the Federal Constitution.

The act manifestly is an attempt by the General Court to measure the excise solely by the property and net income of the foreign corporation fairly attributable to the business done within the Commonwealth. If the foreign corporation can be subjected to an excise tax in respect to its business within this Commonwealth, this appears to be a fair and practicable method of calculating the excise. It is protected in principle, in our opinion, by decisions of the Supreme Court of the United States concerning our earlier foreign corporation excise tax laws. *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68. *Cheney Brothers Co.* v. *Massachusetts,* 246 U. S. 147. It avoids any attempt to tax property outside the Commonwealth which was held fatal to the statute under consideration in *International Paper Co.* v. *Massachusetts,* 246 U. S. 135.

The statute here assailed seems to us indistinguishable in its essential characteristics as to constitutionality from those upheld in *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, *Shaffer* v. *Carter,* 252 U. S. 37, and *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113. In the first of these decisions it was said, 247 U. S. at pages 328, 329: "The correct line of distinction is so well illustrated in two cases decided at the present term that we hardly need go further. In *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, we held that a State tax upon the business of selling goods in foreign commerce, measured by a certain percentage of the gross transactions in such commerce, was by its necessary effect a tax upon the commerce, and at the same time a duty upon exports, contrary to §§ 8 and 10 of Article I of the Constitution, since it operated to lay a direct burden upon every transaction by withholding for the use of the State a part of every dollar received. On the other hand, in *Peck & Co.* v. *Lowe, ante,* 165, we held that the Income Tax Act of October 3, 1913, c. 16, § 2, 38 Stat. 166, 172, when carried into effect by imposing an assessment upon the entire net income of a corporation, approximately three-fourths of which was derived from the export of goods to foreign countries, did not amount to laying a tax or duty on articles exported within the meaning of Art. 1, § 9, cl. 5 of the Constitution. The distinction between a direct and an indirect burden by way of tax or duty was developed, and it was shown that an income tax laid generally on net incomes, not on income from exportation because

of its source or in the way of discrimination, but just as it was laid on other income, and affecting only the net receipts from exportation after all expenses were paid and losses adjusted and the recipient of the income was free to use it as he chose, was only an indirect burden.

"The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce. A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large. Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the States are not exempted by the Federal Constitution because they happen to be engaged in commerce among the States." In the last of these decisions, 254 U. S., at pages 119, 120, it was said: "Payment of the tax is not made a condition precedent to the right of the corporation to carry on business, including interstate business. Its enforcement is left to the ordinary means of collecting taxes. *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 364; *Atlantic & Pacific Telegraph Co.* v. *Philadelphia,* 190 U. S. 160, 163. The statute is, therefore, not open to the objection that it compels the company to pay for the privilege of engaging in interstate commerce. A tax is not obnoxious to the commerce clause merely because imposed upon property used in interstate commerce, even if it takes the form of a tax for the privilege of exercising its franchise

within the State. *Postal Telegraph Cable Co.* v. *Adams*, 155 U. S. 688, 695. This tax is based upon the net profits earned within the State. That a tax measured by net profits is valid, although these profits may have been derived in part, or indeed mainly, from interstate commerce is settled. *U. S. Glue Co.* v. *Oak Creek*, 247 U. S. 321; *Shaffer* v. *Carter*, 252 U. S. 37, 57. Compare *Peck & Co.* v. *Lowe*, 247 U. S. 165. Whether it be deemed a property tax or a franchise tax, it is not obnoxious to the commerce clause." Both in form and substance the present tax law appears to us to be wholly supported by *Hump Hairpin Manuf. Co.* v. *Emmerson*, 258 U. S. 290, where it was said respecting a somewhat similar statute: "Clearly the statute is not a disguised attempt to tax interstate commerce. On the contrary, its purpose plainly is to differentiate State from interstate business and to impose the tax only on the former. Construed with other statutes the act accords equal treatment to domestic and foreign corporations. . . ."

The facts show that the petitioner is doing local or intrastate business within this Commonwealth. It acts as agent for its customers in engaging packers to pack their goods and truckmen to transport goods from the homes, warehouses and places of storage or of business of its customers to a warehouse, and in procuring insurance upon their property. It does this service without direct compensation. It appears to the customer to be gratuitous. There is nothing to indicate in what proportion of the shipments made to or from Boston the petitioner, acting as the agent of the shipper, arranges with an independent contractor to pack the goods and to cart them to a warehouse for storage there in its own name and insures them, or what proportion are delivered to it already packed. For aught that appears, this service may have been rendered in substantially all cases. It cannot be assumed that these instances are negligible. The burden of proof is upon the petitioner to make out its right as matter of law to abatement of the tax. No intendment as to evidence can be made in its favor beyond what is shown in the record. This service is rendered without direct charge to the customer. "This is a matter of accommodation to the customer to secure business." It is none the less a doing of business. It must be of substantial cost to the petitioner. It is local in its nature and in direct competition with others soliciting the same class of business.

Even if it be assumed that the service thus rendered by the petitioner with respect to shipments made from its offices in other States to it in Boston is interstate commerce, see *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 573, 574, it is plain that the service thus rendered in Massachusetts in the collection and storage and insurance of goods to be shipped to its offices in other States is local or intrastate business.

In another respect the petitioner is engaged in intrastate business in Massachusetts. Confessedly the petitioner, although maintaining no warehouse, gathers together, stores and holds various small lots of goods in its "Assembling Station" (to quote the words of its contract) until it has accumulated enough to make a "carload lot," when it combines these several small lots into a load for a car and starts them on an interstate shipment. This is a doing of business. It is a business which is local and not interstate in its nature.

The goods have not begun transportation until delivered to a common carrier. While held by the petitioner at its "Assembling Station" or stored in a warehouse in its name, the goods are awaiting transportation. In all these particulars the petitioner by the express terms of its contract with its customer is acting as the latter's agent and not as a carrier.

These facts show that the business done by the petitioner with respect to the goods of its customers before the actual delivery of them to a common carrier for transportation in interstate commerce is domestic and not interstate in nature. It comes within the principles declared in several decisions of the United States Supreme Court. It was said in *McCluskey* v. *Marysville & Northern Railway*, 243 U. S. 36, at page 38, quoting from *Coe* v. *Errol*, 116 U. S. 517: "'When the products of the farm or the forest are collected and brought in from the surrounding country to a town or station serving as an entrepôt for that particular region, whether on a river or a line of railroad, such products are not yet exports, nor are they in process of exportation, nor is exportation begun until they are committed to the common carrier for transportation out of the State to the State of their destination, or have started on their ultimate passage to that State.' . . . 'But this movement [that is, interstate commerce movement] does not begin until the articles have been shipped or started for

transportation from one State to the other. The carrying of them in carts or other vehicles, or even floating them, to the depot where the journey is to commence is no part of that journey. . . . Until actually launched on its way to another State, or committed to a common carrier for transportation to such State, its destination is not fixed and certain. It may be sold or otherwise disposed of within the State, and never put in course of transportation out of the State.'"

The case at bar also closely resembles the cab service furnished by the Pennsylvania Railroad to take its passengers to and from its New York terminus to various places in that city. It was said in *Pennsylvania Railroad* v. *Knight*, 192 U. S. 21, 27, 28: "As we have seen, the cab service is rendered wholly within the State and has no contractual or necessary relation to interstate transportation. It is either preliminary or subsequent thereto. It is independently contracted for, and not necessarily connected therewith. But when service is wholly within a State, it is presumably subject to State control. The burden is on him who asserts that, though actually within, it is legally outside the State; and unless the interstate character is established, locality determines the question of jurisdiction. . . . Many things have more or less close relation to interstate commerce, which are not properly to be regarded as a part of it. If the cab which carries the passengers from the hotel to the ferry landing is engaged in interstate transportation, why is not the porter who carries the traveler's trunk from his room to the carriage also so engaged? If the cab service is interstate transportation, are the drivers of the cabs and the dealers who supply hay and grain for the horses also engaged in interstate commerce? And where will the limit be placed? We are of opinion that the cab service is an independent local service." To the same effect are *Arkadelphia Milling Co.* v. *St. Louis Southwestern Railway*, 249 U. S. 134, 151, *Bacon* v. *Illinois*, 227 U. S. 504, 515, 517, *Diamond Match Co.* v. *Ontonagon*, 188 U. S. 82, 96, *Koshland* v. *Columbia Ins. Co.* 237 Mass. 467, 474, *H. P. Hood & Sons* v. *Commonwealth*, 235 Mass. 572, 576, 577.

In our opinion the circumstance that the petitioner makes no profit out of its Massachusetts business, charging only its actual disbursements, in this connection is immaterial. There is no pretence that the petitioner is an eleemosynary corporation

doing this work for purely altruistic ends. It is a business cor-
poration organized for profit. It cannot avoid responsibility to
local laws for local business by so gauging its charges as to allocate
its profit wholly to its interstate business. It has adopted this
method voluntarily for its own ends. The Commonwealth is not
bound by these methods. The taxing power has a right to look
to the substance of things and collect its imposts from whatever
is within the jurisdiction of its constitutional laws. *Wagner* v.
*Covington,* 251 U. S. 95.

Since the petitioner was conducting a substantial intrastate
business, the Commonwealth could lawfully levy an excise tax.
In this particular the case at bar is within the protection of deci-
sions under the earlier taxing laws. *Baltic Mining Co.* v. *Massa-
chusetts,* 231 U. S. 68. *Cheney Brothers Co.* v. *Massachusetts,* 246
U. S. 147. *Old Dominion Co.* v. *Commonwealth,* 237 Mass. 269.

It is not necessary to decide whether this tax statute would
be void in its application to foreign corporations engaged within
this Commonwealth exclusively in interstate or foreign commerce.
That point is left open.

*Petition dismissed with costs.*