THE ATLANTIC LUMBER COMPANY vs. COMMISSIONER OF
CORPORATIONS AND TAXATION.

Suffolk.   December 4, 1934. — September 12, 1935.

Present: RUGG, C.J., CROSBY, FIELD, & DONAHUE, JJ.

*Tax*, Excise on corporation. *Interstate Commerce.   Constitutional Law*,
Due process of law, Taxation.

A foreign corporation whose principal business was in interstate com-
merce, was also engaged in local business within the Commonwealth
if its principal office, one of its sales offices, its treasurer, its direc-
tors' meetings and its corporate records were here and it here carried
on correspondence and other business activities, and received, de-
posited and paid out money, including dividends; and G. L. (Ter. Ed.)
c. 63, §§ 39–43, levying an excise upon the corporation, with respect to
such local business, of a percentage on "the corporate excess employed
by it within this Commonwealth" violated neither the "commerce
clause" of the Constitution of the United States nor the "due process"
clause of the Fourteenth Amendment to that Constitution.

APPEAL, filed in the Supreme Judicial Court for the county
of Suffolk on June 22, 1934, by a taxpayer from a decision
by the Board of Tax Appeals disallowing in part a petition
for abatement of a corporate excise tax.

*R. C. McKay*, for the taxpayer.

*C. F. Lovejoy*, Assistant Attorney General, for the Com-
missioner of Corporations and Taxation.

RUGG, C.J.   This is an appeal from a decision by the
Board of Tax Appeals.   G. L. (Ter. Ed.) c. 58A, § 13, as
most recently amended by St. 1933, c. 321, § 7, and c. 350,
§ 8.   By that decision a partial abatement of the excise
tax of the taxpayer was granted about which no question
now is raised; but the claim for abatement of the entire
tax was denied.   The single issue presented is whether the
tax constituted a burden upon the interstate commerce of
the taxpayer so as to be beyond the power of the Common-
wealth and an infringement upon the powers vested ex-
clusively in the United States, and was a deprivation of
its property without due process of law.

The facts are these: The taxpayer is a corporation organized under the laws of Delaware. Its business is dealing in lumber at wholesale. Its principal office is in Boston in this Commonwealth. It maintains sales offices in Boston and in Buffalo in the State of New York. Its Boston office is used as the headquarters of salesmen who solicit orders in this Commonwealth, in other New England States and in a part of the State of New York, and for carrying on correspondence and other business activities in connection with the receipt of orders and shipment of goods for that territory. Orders obtained by such salesmen are accepted at the Boston office and are filled from the distributing yard of the taxpayer at Buffalo, or from the mill of some subsidiary outside of this Commonwealth. Lumber is shipped from those points, always in carload lots, directly to the customer. Remittances from customers in the New England States are made to the Boston office. No stocks of lumber are kept in this Commonwealth. The only tangible property kept in this Commonwealth is office furniture and equipment and salesmen's automobiles. Bank accounts are maintained in Boston, in Brooklyn, Buffalo and New York in the State of New York, and in Toronto in Canada. The Boston account is the most active and next to the largest in amount. The Boston salesmen are paid from that account. The corporate books and records are kept in Boston, the treasurer is located there, and directors' meetings are held there. Dividends on the preferred stock have been paid out of the Boston bank account, including two in 1931. No dividends have been paid on the common stock. The taxpayer had no net income derived from business carried on within the Commonwealth. The corporate excess employed within this Commonwealth was determined by the defendant and the excise calculated on it was paid by the taxpayer. No contention is made that in these particulars the statutory provisions were not followed or that the calculations were not correct.

The tax here assailed was levied under G. L. (Ter. Ed.) c. 63, §§ 39–43. Its essential provisions are that a "for-

eign corporation shall pay annually, with respect to the carrying on or doing of business by it within the Commonwealth, an excise equal to the sum" of a percentage on the corporate excess employed by it in this Commonwealth and a percentage on its net income attributable to business done in this Commonwealth. The second of these two factors may be disregarded in the case at bar, since the taxpayer had no such income and no part of the excise assessed had any reference to such income.

The true character of the tax thus authorized now is settled. It is confined solely to foreign corporations doing intrastate business within the Commonwealth. It does not apply to those engaged exclusively in interstate commerce. It is not a franchise tax on the right to exist as a corporation. It is not a tax on tangible or other property. It is not an income tax. It is measured by property and net income fairly attributable to the business done within the Commonwealth. It is an excise for the commodity or privilege of having a place for the transaction of intrastate business in Massachusetts with the protection of our laws and the financial, commercial and other advantages appertaining thereto. *Judson Freight Forwarding Co.* v. *Commonwealth,* 242 Mass. 47, 51. *W. & J. Sloane* v. *Commonwealth,* 253 Mass. 529, 532. *Carlos Ruggles Lumber Co.* v. *Commonwealth,* 261 Mass. 450, 452–453. *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203, 213–216.

The first point for decision is whether upon the facts already recited the taxpayer was carrying on intrastate business within the Commonwealth, or whether its business activities were confined exclusively to interstate commerce. Doubtless certain of its activities were interstate commerce; but others were not. The principal office of the taxpayer was in Boston. Its most active bank account was there. Corporate books and records were kept there; the location of its treasurer with all its implications was there; the dividends were paid and the meetings of its directors were held there. These are corporate functions which are not interstate commerce. That this constituted local and intrastate business which subjected the foreign corporation to

the excise tax of this Commonwealth seems to us to be settled by the decision in *Cheney Brothers Co.* v. *Massachusetts*, 246 U. S. 147, where at pages 155, 156 was affirmed the decision of this court in *Marconi Wireless Telegraph Co.* v. *Commonwealth*, 218 Mass. 558, 576–579, as to the Copper Range Company and the Champion Copper Company. Those cases related to an earlier excise tax statute than the one here involved, but the decision turned on the precise point here raised, whether the business subjected to the tax was local or interstate commerce. The objections to that tax were based on the commerce clause of the Federal Constitution and on the due process and equal protection clauses of the Fourteenth Amendment. The entire decision of the United States Supreme Court with reference to those two corporations was in these words: "COPPER RANGE COMPANY This is a Michigan corporation whose articles of association contemplate that it shall have an office in Boston. It is a holding company and owns various corporate stocks and bonds and certain mineral lands in Michigan. Its activities in Massachusetts consist in holding stockholders' and directors' meetings, keeping corporate records and financial books of account, receiving monthly dividends from its holdings of stock, depositing the money in Boston banks and paying the same out, less salaries and expenses, as dividends to its stockholders three or four times a year. The exaction of a tax for the exercise of such corporate faculties is within the power of the State. Interstate commerce is not affected. CHAMPION COPPER COMPANY This is another Michigan corporation which maintains an office in Boston pursuant to a provision in its articles of association. It deposits the proceeds of its mining and smelting business in Michigan in Boston banks and, after paying salaries and expenses, distributes the balance in dividends from its Boston office. The management of its mine is under the control of a general manager in Michigan and he in turn is under the control of the company's directors. The meetings of the latter, which occur several times a year, are held in the Boston office. At these meetings the directors receive reports from the treasurer and

general manager, vote dividends, elect officers, and authorize
the execution of deeds and the like for lands in Michigan.
These corporate activities in Massachusetts are not inter-
state commerce and may be made the basis of an excise
tax by that State." The decision of those two cases on
this point has been cited with approval. *Ozark Pipe Line
Corp.* v. *Monier*, 266 U. S. 555, 566, 567. *Alpha Portland
Cement Co.* v. *Massachusetts*, 268 U. S. 203, 217. It was
said of it in a dissenting opinion in *Cudahy Packing Co.*
v. *Hinkle*, 278 U. S. 460, 468: "That decision was made
by a unanimous Court after much deliberation. It has
never been disapproved." We are unable to perceive any
difference in the facts of those cases and those in the one
at bar. So far as concerns the essential character of the
tax statutes involved in those cases and in the case at bar,
it is the same. To the same effect in principle are *Old
Dominion Co.* v. *Commonwealth*, 237 Mass. 269, 276–278,
and *Carlos Ruggles Lumber Co.* v. *Commonwealth*, 261
Mass. 450. The case at bar seems to us quite distinguish-
able from *Cheney Brothers Co.* v. *Massachusetts*, 246 U. S.
147, 153–154, reversing 218 Mass. 558, 569–573.

The taxpayer relies strongly upon *Ozark Pipe Line Corp.*
v. *Monier*, 266 U. S. 555. In that case a corporation organ-
ized under the laws of Maryland operated a pipe line from
Oklahoma through Missouri to a point in Illinois, through
which crude petroleum was conducted. No oil was received
or delivered in Missouri. The principal office of the cor-
poration was maintained in Missouri, and its bank accounts
and books were there. It does not appear that its direc-
tors' meetings were held in Missouri, that its treasurer was
located there, or that its dividends were paid there. The
court in its opinion stressed the fact that the corporate
activities at the Missouri office of the corporation were
solely in furtherance of interstate transportation of oil in
the pipe line. In holding that the franchise tax levied by
the State of Missouri was invalid as a burden on interstate
commerce, the cases in 246 U. S. 147, 155–156 (to which
we have already adverted) were affirmed by stating at
page 566: "The fourth and fifth were mining companies

operating mines in Michigan with offices in Boston where their directors met, declared and paid dividends, etc. Interstate commerce was not affected." In the case at bar these activities and others constituting the corporate life of the taxpayer were carried on in this Commonwealth. In *Anglo-Chilean Nitrate Sales Corp.* v. *Alabama*, 288 U. S. 218, the State franchise tax held repugnant to the Federal Constitution was imposed upon a New York corporation with its principal offices in New York, and only an importing business in Alabama.

The tax in the case at bar may have some remote effect upon the business of the taxpayer, but no more than that of any local *ad valorem* tax which under established principles may be placed upon tangible and intangible property within the Commonwealth without so burdening interstate commerce as to be an interference with the Federal power of regulation. In *Virginia* v. *Imperial Coal Sales Co. Inc.* 293 U. S. 15, a "capital tax" computed upon the value of stock on hand, excess of bills and accounts receivable over bills and accounts payable, cash on hand and on deposit, and other intangibles located in Virginia, was sustained. The local business appears to have been inseparable from its interstate business which was selling coal for foreign coal mining corporations, none of any consequence being located or sold in Virginia. The effect of the excise on the taxpayer in the circumstances disclosed in the instant case is as remote from interstate commerce as in the Virginia case. It is based upon that proportion of its tangibles and intangibles deemed to be employed in this Commonwealth. The effect upon interstate commerce is at most incidental and remote. The fact that it may be paid from profits derived from interstate commerce does not render it a burden on such business. *Edelman* v. *Boeing Air, Transport, Inc.* 289 U. S. 249.

It has not been argued in behalf of the taxpayer that its intrastate business is inseparable from its interstate business. Therefore, that question need not be considered. One single point urged on this aspect of the case is that the taxpayer does no intrastate business.

Another contention of the taxpayer is that it has been deprived of property without due process of law. The tax, as already demonstrated, is in both form and substance an excise and not a property tax. The aim of the statute is to measure the excise by property correctly determined to be allocated to the business in this Commonwealth. The taxpayer does not point out any property outside the Commonwealth which has been taxed. A part of its intangibles, such as cash and deposits in banks, without question is allocable to Massachusetts. No foundation is found in the facts presented for the contention that property not having a situs in the Commonwealth has been taxed. The taxpayer cannot upon this record question the allocation made by the defendant. *Alpha Portland Cement Co.* v. *Commonwealth*, 248 Mass. 156.

The excise here assailed conforms to the test recently laid down in *Cooney* v. *Mountain States Telephone & Telegraph Co.* 294 U. S. 384, at page 393, in these words: "Where the tax is exacted from one doing both an interstate and intrastate business, it must appear that it is imposed solely on account of the latter; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the tax; and that one who is taxed could discontinue the intrastate business without also withdrawing from the interstate business."

The conclusion is that the abatement is granted in the sum found by the Board of Tax Appeals with costs, and that the costs of this appeal are to be assessed against The Atlantic Lumber Company. G. L. (Ter. Ed.) c. 58A, § 13, as amended by St. 1933, c. 321, § 7.

*So ordered.*