M. A. Delph Brokerage Co., Inc. of New England *vs.* State Tax Commission.

Suffolk. February 3, 1964. — February 26, 1964.

Present: Wilkins, C.J., Spalding, Kirk, Spiegel, & Reardon, JJ.

*Interstate Commerce. Taxation,* Corporate excise. *Corporation,* Foreign corporation.

On the facts respecting a foreign brokerage corporation whose office for corporate meetings, financial functions, and keeping of books and records was in another State, and which maintained a Massachusetts office where it employed a secretary-receptionist and two salesmen soliciting in Massachusetts and elsewhere orders which the corporation had no authority to accept or reject but were submitted to foreign sellers and, if accepted by them, were filled by shipments from points outside Massachusetts directly to the buyers, who were billed directly by the sellers and paid for the goods directly to the sellers, and paid to the corporation its commissions on the goods sold, the corporation in Massachusetts was engaged exclusively in interstate commerce and did no intrastate business and was not subject to the foreign corporation excise under G. L. c. 63, § 39.

APPEAL from a decision by the Appellate Tax Board.

*Lane McGovern* for the taxpayer.

*Herbert E. Tucker, Jr.,* Assistant Attorney General, for the State Tax Commission.

WILKINS, C.J.   This is an appeal from the refusal of the State Tax Commission to abate the foreign corporation excise assessed under G. L. c. 63, § 39, as amended, against the taxpayer (Brokerage), an Indiana corporation, for its fiscal years ending June 30, 1956, and June 30, 1957.   The petition, which was under formal procedure, alleged that Brokerage was not subject to the tax because it engaged in no intrastate business.   The case was heard by the Appellate Tax Board on a statement of agreed facts.

Brokerage was organized on February 2, 1956, and later that month registered to do business in this Commonwealth as required by G. L. c. 181.   It is a wholly owned subsidiary of M. A. Delph Company, Inc., also an Indiana corporation, located in Indianapolis.   Brokerage had its corporate office and a place of business at the principal office of its parent, and its corporate officers held the corresponding offices in the parent corporation.

Brokerage's business was the brokerage of hides, primarily in the New England area, and it solicited orders for a group of sellers all located outside of Massachusetts.   It had a Boston office, where three persons were employed.   These were two traveling salesmen and a secretary-receptionist.   The salesmen solicited orders in Massachusetts, in the other New England States, and occasionally in other areas.   The activities of the Boston office were directed and controlled from Indianapolis.   During the day the Boston office received from Indianapolis market information and instructions to aid in solicitation of orders from buyers of hides.   The salesmen procured orders from buyers in the form of offers to purchase.   These offers were usually oral, and designated the quantity and quality desired and the price offered.   These orders were transmitted by telephone, teletype, or mail to the Indianapolis office which got in touch with prospective sellers.   A seller exclusively passed upon, and either accepted or rejected, the order.   Brokerage had

no authority to approve or accept any order on behalf of any seller, and in fact did not do so. The sellers were principally the parent corporation, and other subsidiary corporations of the parent corporation engaged in the hide processing and sale business (but not in the brokerage business) in Ohio, Illinois, Oklahoma, and Texas.

After acceptance by the seller Brokerage was so advised by Indianapolis, and Brokerage in turn advised the buyer. Brokerage then prepared a memorandum to confirm the sale agreement, and copies were distributed to the seller and the buyer. One copy was approved and signed by the buyer and returned to Brokerage, which then forwarded the copy to Indianapolis.

All hides sold were stored by the sellers outside of Massachusetts, and were shipped by the sellers from points outside of Massachusetts directly to the buyers. Brokerage did not maintain an inventory or stock of goods or a warehouse and owned no real estate. All invoices for the purchase price were sent directly by the seller to the buyer at the time of shipment of the hides. A copy was sent to the Boston office. Remittances in payment for purchases were sent by the buyer directly to the seller. Brokerage did no invoicing to the buyer, received no remittances, and made no collections for or on behalf of the seller. All sales were at the seller's credit risk.

Brokerage received a commission for hides sold on accepted orders, but none on orders rejected by the seller. Bills for commissions were generally sent from Boston as soon as Brokerage received its copy of the seller's invoice. Payments of commissions were generally remitted by buyers directly to Indianapolis, and any checks received at Boston were forwarded to Indianapolis.

The Boston office space was leased. Brokerage's tangible personal property was in Massachusetts, and was confined to office furniture and equipment and an automobile for use in soliciting orders. Brokerage maintained a bank account for the sole purpose of paying salaries and office expenses. All moneys for deposit in this account were advanced from Indianapolis.

Brokerage maintained no corporate meeting place in Massachusetts, and no directors' or stockholders' meetings were held here. Its financial functions were performed in Indianapolis, where its financial officers were located, and where a bank account and a complete set of books of account were maintained and all its corporate books and records were kept. Dividends were declared and paid from there.

Brokerage performed no activities and owned and used no property not hereinbefore described in the summary of the statement of facts.

The decision of the Appellate Tax Board contains the following: "[T]he true nature of a significant part of appellant's business is local in character. A large part of appellant's business is being done with Massachusetts principals who are the purchasers of hides. The appellant performs a function which ordinarily might very well be done by the local purchaser's own employees, usually called 'buyers.' The chief difference is that this service is performed by the appellant as an independent contractor or broker. Looking at substance rather than form, the appellant appears to us to be performing a service in a capacity akin to a 'buyer' of raw materials for Massachusetts manufacturers and users who pay for this service. It is evident that part of this service is purely local and we believe separate from interstate commerce. Where a foreign corporation engages in purely local activities and performs local services which are separable from interstate commerce the corporation subjects itself to our Massachusetts corporate excise tax. See *Judson Freight Forwarding Co.* v. *Commonwealth*, 242 Mass. 47."

The tax board correctly ruled, in accordance with the taxpayer's first and third requests, that G. L. c. 63, § 39, does not apply to a foreign corporation engaged exclusively in interstate commerce; and that the fact that a foreign corporation has a Boston office which is used as a headquarters for salesmen, and which is attended by a secretary-receptionist who prepares and files correspondence, duplicates of orders, and other papers, does not make it subject to the

corporation excise tax unless these employees and the Boston office are being used as the means of carrying on an intrastate, as distinguished from interstate, business. *Atlantic Lumber Co.* v. *Commissioner of Corps. & Taxn.* 292 Mass. 51, 53, affd. 298 U. S. 553. *Commissioner of Corps. & Taxn.* v. *Ford Motor Co.* 308 Mass. 558, 564. *State Tax Commn.* v. *John H. Breck, Inc.* 336 Mass. 277, 290. *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203, 218–219. *Spector Motor Serv. Inc.* v. *O'Connor,* 340 U. S. 602, 609. The board, however, denied the taxpayer's second request that its activities were exclusively in interstate commerce.

The tax commission's brief "examines" the facts and comes up with the conclusion that the taxpayer is a broker or agent for the purchasers and not for the sellers as the wording of the statement of agreed facts would indicate. The crux of the argument seems to be: "Its job is to procure a customer, or to effect a sale or exchange. These services were performed for the purchasers of hides, for which it receives commissions paid by the purchasers. For obvious reasons the appellant would have these transactions determined as a solicitation of orders on behalf of the sellers of the hides. The important factor is that in these transactions the purchasers pay for the services of the appellant and not the parent corporation, the actual sellers."

The tax commission's reliance upon the source of payment of the commissions is at best ambiguous. See Restatement 2d: Agency, § 14 L, comment c. In any event this circumstance cannot prevail over the facts expressly agreed.

The *Judson* case, 242 Mass. 47, cited by the tax board, concerned a substantially different situation which is of no present pertinence. There the foreign corporation was engaged in collecting and storing small lots of goods for its customers until it had accumulated enough to make a "carload lot," which it delivered to a carrier for interstate shipment. At page 56, it was said, "This is a doing of business. It is a business which is local and not interstate in its nature. The goods have not begun transportation until delivered to a common carrier. While held by the petitioner

at its 'Assembling Station' or stored in a warehouse in its name, the goods are awaiting transportation.   In all these particulars the petitioner by the express terms of its contract with its customer is acting as the latter's agent and not as a carrier.   These facts show that the business done by the petitioner with respect to the goods of its customers before the actual delivery of them to a common carrier for transportation in interstate commerce is domestic and not interstate in nature.''   In the case at bar there was no handling of the hides in Massachusetts.   Brokerage performed no local service.   What it did, was to solicit offers to buy, according to the agreed facts, but, even if it solicited offers to sell, that  would not have constituted intrastate business. *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S. 282, 290–291.   *Gwin, White & Prince, Inc.* v. *Henneford,* 305 U. S. 434, 437.   *Memphis Steam Laundry Cleaner, Inc.* v. *Stone,* 342 U. S. 389, 392–393.

The decision of the Appellate Tax Board is reversed. The abatements are to be granted with costs to the taxpayer.

*So ordered.*