QUEENS RUN REFRACTORIES COMPANY, INCORPORATED, *vs.* COMMONWEALTH.

Suffolk. November 6, 1929. — January 7, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, & CARROLL, JJ.

*Tax,* Excise. *Corporation,* Taxation. *Words,* "Doing of business."

A Massachusetts corporation, incorporated in 1920, partly with cash realized from sale of shares of its own stock and partly by exchange of its own shares, before April 1, 1921, bought in the open market shares of stock of three foreign corporations, received dividends on such shares, from funds thus received paid dividends to its own shareholders, and made temporary loans to two of the foreign corporations out of its funds which were at the time of the loans idle. In September, 1921, the corporation acquired the physical assets of the foreign corporations and carried on the business formerly carried on by them. All its acts previous thereto consisted only of realizing the financial requirements and doing the preliminary acts and things and following

the methods which it deemed necessary and proper to acquire such property and assets. The office of its attorney in Boston was stated to the commissioner of corporations and taxation as its address for all official communications. The attorney therein did such legal work for the corporation as was required. The president received official communications at an office of another corporation in another State. No other office was maintained by the corporation. *Held,* that such activities previous to April 1, 1921, constituted a "doing of business" by the corporation and warranted the assessment of an excise tax for the year 1920 under G. L. c. 63, § 32.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on October 11, 1922, for an abatement of an excise tax assessed upon the petitioner as of April 1, 1921.

The petition was heard by *Wait,* J., upon an agreed statement of facts. From the amended return filed by the petitioner, it appeared that, on April 1, 1921, notes receivable of the petitioner amounted to $62,000. Among the agreed facts were the following:

"4. Prior to the acquisition of the properties and assets of said corporations the activities of the petitioner consisted of realizing the financial requirements, doing the preliminary acts and things and following the methods which it deemed necessary and proper to acquire the property and assets aforesaid, pursuant to its purpose of carrying on and operating the business of the said Pennsylvania corporations at such time as the aforesaid properties should be acquired. . . ."

"9. Prior to September 28, 1921, the petitioner held one annual meeting of its stockholders for the purpose of election of officers and also held directors meetings to declare quarterly dividends and take the necessary action to acquire the properties and assets of the Pennsylvania corporations, all of which meetings with the exception of said annual meeting of stockholders and one meeting of the directors which was held at the Hotel Touraine in Boston, Massachusetts, being held outside of the Commonwealth of Massachusetts. At one of the said directors meetings, the petitioner voted to loan temporarily to two of the said Pennsylvania corporations whose properties and assets

were subsequently acquired by the petitioner, an aggregate of about $60,000 of funds which were at that time idle. The petitioner employed an attorney having offices at 15 State Street, Boston, Massachusetts, to do such legal work as the corporation required. The said attorney also served as clerk of the petitioner corporation. The office address of said attorney was furnished to the commissioner of corporations and taxation by the petitioner as its address for all official communications. The president of the petitioner corporation received communications relating to the affairs of the corporation at the office of Troy Foundry & Machine Company, a corporation of which he was president and manager, located in Troy, New York. Neither the president nor any other officer of the corporation received any compensation from the petitioner corporation. The Boston attorney above mentioned received no compensation from the petitioner corporation other than fees for legal services.

"10. Prior to September 28, 1921, the petitioner owned no real or tangible personal property within the Commonwealth of Massachusetts or elsewhere. Its entire property and assets consisted of stock in the three Pennsylvania corporations acquired in the manner set forth in paragraph five above, the surplus cash on hand and for a short period of time the loans to the Pennsylvania corporations set forth in paragraph nine above. The only sources of income prior to September 28, 1921, of the petitioner corporation out of which dividends were declared and paid to stockholders resulted from the dividends amounting to the sum of $28,028 received upon the stock which it had from time to time acquired in said Pennsylvania corporations prior to the acquisition of the properties and assets of the said Pennsylvania corporations, an item of $1,250 resulting from an adjustment of accounts with brokers engaged in the sale of its capital stock and interest upon its bank balances amounting to $144.20.

"11. The petitioner prior to September 28, 1921, maintained no executive or other offices in the Commonwealth of Massachusetts or elsewhere, except as set forth in paragraph nine above, paid no salaries to officers, and incurred

no expenses of any nature, except commissions and expenses payable incident to the sale of its capital stock and expenses for legal services as set forth in paragraph nine above. The principal depositaries of its funds received from the sale of its capital stock were banks in New York and Pennsylvania, except that it maintained a bank account with the American Trust Company of Boston, which bank acted as its agent in distributing dividends and also as the agent for the transfer of its capital stock. No bookkeeping department of any sort was maintained by the petitioner prior to September 28, 1921, the record of its finances being kept on memorandum outside the Commonwealth of Massachusetts by officers of the petitioner who served without compensation during said period."

Other material facts are stated in the opinion.

The petition was denied. The petitioner appealed.

*A. F. Tupper,* (*W. R. Bigelow* with him,) for the petitioner.

*G. B. Lourie,* Assistant Attorney General, for the Commonwealth.

CARROLL, J. This is a petition under G. L. c. 63, § 77, to recover an excise tax, assessed under the authority of G. L. c. 63, § 32, which enacts that every domestic corporation shall pay annually "with respect to the carrying on or doing of business by it" an excise as set forth in the statute. A decree was entered denying the petition and the petitioner appealed.

The petitioner was organized under the laws of this Commonwealth on June 23, 1920. Its charter gave it broad powers. After incorporation the petitioner bought in the open market the shares of stock of three Pennsylvania corporations which were carrying on the business of mining, manufacturing and dealing in brick products. The stock was purchased by the petitioner from shareholders of the Pennsylvania corporations partly by exchange of stock of the petitioner for the stock of the Pennsylvania corporations and partly by cash obtained by the sale of the petitioner's capital stock in the open market. It received dividends on the stock of the Pennsylvania corporations held by it, and paid dividends from the funds thus obtained to its own

stockholders. The petitioner made temporary loans to two of the Pennsylvania corporations out of its funds which were at the time of the loans idle. On September 28, 1921, the petitioner, having acquired the entire capital stock of the three Pennsylvania corporations, gave back to these corporations this stock and received in exchange the entire capital assets of the said corporations. The petitioner filed a tax return on April 12, 1921, and an amended return on September 30, 1921. The tax was assessed based on the information in this amended return. There has been a partial abatement of the tax. On August 12, 1922, the petitioner paid to the respondent the amount of the tax as finally determined. It seeks to recover the excise for the year 1920 imposed under the authority of G. L. c. 63 as amended, especially § 32.

The issue raised by the petitioner in this proceeding is this: Did its activities prior to April 1, 1921, constitute "doing of business" so as to render it subject to an excise tax? It contends that no business was carried on by it within the Commonwealth or elsewhere prior to April 1, 1921. The respondent's contention is that the petitioner was engaged in "doing of business"; that the tax was levied in conformity with the. statute. The respondent admits that the ultimate purpose of the petitioner was to engage in the business of making and selling bricks, but contends that the methods employed and the activities of the petitioner to bring about this ultimate result were a "doing of business" differing somewhat from the nature of the ultimate business but none the less a "doing of business."

Considering all of the activities in which the petitioner was engaged during the year in question, it was doing business and it was occupied in the "doing of business" within the meaning of the statute. The corporation "was organized for profit and was doing what it principally was organized to do in order to realize profit. The cases must be exceptional, when such activities of such corporations do not amount to doing business in the sense of the statutes." *Edwards* v. *Chile Copper Co.* 270 U. S. 452, 455. In purchasing the stock of the Pennsylvania corporations, collecting

dividends and distributing them to the stockholders, and in making temporary loans, the petitioner was doing business, and therefore taxable under the statute. The purchases made in the open market involved negotiations and the making of terms, and this was doing business. This question was fully considered in *Copper Range Co.* v. *Commonwealth*, 218 Mass. 558, 576, 577, affirmed in *Cheney Brothers Co.* v. *Massachusetts*, 246 U. S. 147, 155. In our opinion the case at bar cannot be distinguished from that case. See *Springdale Finishing Co.* v. *Commonwealth*, 242 Mass. 37.

The petitioner was not a mere "naked repository of corporate power, dormant so far as any possibility of profit to itself is concerned." *Attorney General* v. *Boston & Albany Railroad*, 233 Mass. 460, 464. It was an active, living corporation, engaged in a course of business transactions preliminary to its final purpose, transactions which called for business judgment. It was more than the mere possessor of a corporate franchise. It was not similar to a corporation which had leased all its property, it was actively engaged in the pursuit of its business and was therefore taxable. *Fore River Shipbuilding Corp.* v. *Commonwealth*, 248 Mass. 137. In the recent case of *Boston & Providence Railroad* v. *Old Colony Railroad*, 269 Mass. 190, the meaning of the word "business" is discussed and the cases collected.

*Decree affirmed with costs.*