STATE TAX COMMISSION *vs.* JOHN H. BRECK, INC.

Suffolk. May 8, 1957. — July 3, 1957.

Present: WILKINS, C.J., RONAN, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Taxation,* Corporate excise. *Constitutional Law,* Taxation, Interstate commerce.

The excise imposed by and calculated according to G. L. (Ter. Ed.) c. 63, § 32, as appearing in St. 1939, c. 363, § 1; § 37; § 38, as amended, upon a domestic business corporation for the privilege of its corporate franchise and the right to engage in business is not upon or measured by its gross receipts, but is, in part, measured by a portion of its net income designed to be fairly related to its Massachusetts activities and the benefit of its corporate privileges under Massachusetts law. [284–285]

The provisions of G. L. (Ter. Ed.) c. 63, § 38, as amended, require that in calculating, for the purposes of the excise imposed on a domestic business corporation, the portion of its net income to be allocated to Massachusetts on the basis of a fraction whose numerator is its gross receipts attributable to Massachusetts and whose denominator is its total gross receipts, there be included in the numerator of such fraction the gross receipts from all sales not shown to be attributable to efforts closely associated with a corporate sales office outside of Massachusetts and that gross receipts from sales be attributed to the sales offices with which the salesmen effecting them are affiliated, whether the sales be in interstate or intrastate commerce. [288]

The imposition by G. L. (Ter. Ed.) c. 63, § 32, as appearing in St. 1939, c. 363, § 1, of an excise upon a domestic business corporation for the privilege of its corporate franchise and the right to engage in business, measured in part by a portion of its net income allocated to Massachusetts under § 38, as amended, on the basis of a fraction whose numerator is its gross receipts attributable to Massachusetts under par. 6 of § 38 requiring that gross receipts from all sales not shown to be assignable to its sales offices outside of Massachusetts be attributed to Massachusetts and whose denominator is its total gross receipts, does not violate the commerce clause of the Federal Constitution even though the statutory provisions require the inclusion of gross receipts from sales in interstate commerce as well as intrastate commerce in the numerator of such fraction. [292, 298]

APPEAL from a decision by the Appellate Tax Board.

*Joseph H. Elcock, Jr.,* Assistant Attorney General, (*John*

*Dane, Jr., & Nicolas L. Metaxas* with him,) for the State tax commission.

*Bennett Sanderson,* for the taxpayer.

CUTTER, J.   John H. Breck, Inc. (hereinafter called Breck), a Massachusetts corporation, has its principal office and factory in Springfield, where it manufactures chemical products "for sale and purchases other . . . merchandise for sale" and sells such products.   Breck "from time to time ships merchandise for sale in other States from its Springfield office" and also ships goods from warehouses outside Massachusetts to points outside the Commonwealth.

Breck filed a 1953 Massachusetts corporate excise return based (so far as concerns income) on that of 1952.   Thereafter it sought abatement of $7,532.93 of its 1953 excise imposed under G. L. (Ter. Ed.) c. 63, § 32, as amended (see, *infra,* note 4).   The application alleged that too large a part of its net income was apportioned to Massachusetts, as the measure of the portion of its 1953 excise based upon net income, because in applying the formula by which income is to be allocated as between Massachusetts and areas outside Massachusetts the "gross receipts assignable to Massachusetts . . . have been overstated by" the amount of interstate sales shipped from Massachusetts to out-of-state customers.

This application was denied by the State tax commission (hereinafter called the commission) and Breck appealed to the Appellate Tax Board, contending that if "any part of the net income [of the corporation] is allocated for taxation in Massachusetts by a formula which measures such part by gross receipts from sales in interstate commerce, the tax on net income as measured by sales in interstate commerce would be in violation of the commerce clause . . . [art. 1, § 8] of the Constitution of the United States and a taking of property without due process of law,[1] and in excess of the

[1] Only questions with respect to the effect of the excise here involved upon interstate commerce have been seriously argued.   The Appellate Tax Board did not deal with any question of due process.   The cases which seem controlling on the interstate commerce issue seem also to control any question

powers of the state under said Constitution." The Appellate Tax Board granted the abatement requested and made findings and a report, from which the facts herein stated have been summarized. The commission has appealed pursuant to G. L. (Ter. Ed.) c. 58A, § 13, as appearing in St. 1933, c. 321, § 7, as amended.[2] The record includes the evidence before the board, as well as the formal documents referred to in § 13, as amended.

The excises now [3] imposed by Massachusetts on corporations are found in G. L. (Ter. Ed.) c. 63, as amended. By § 32, as amended by St. 1939, c. 363, § 1,[4] all Massachusetts business corporations of the class to which Breck belongs are subject to an excise measured in part by "corporate excess" [5] and in part by "its net income determined to be taxable in accordance with . . . this chapter." "Net in-

---

which might be raised on the issue of due process. See, for example, *Matson Navigation Co.* v. *State Board of Equalization*, 297 U. S. 441, 444–445; *Butler Brothers* v. *McColgan*, 315 U. S. 501, 506–508; *International Harvester Co.* v. *Evatt*, 329 U. S. 416.

[2] By St. 1933, c. 350, § 8; St. 1935, c. 218, § 1; St. 1939, c. 366, § 1; St. 1953, c. 654, § 27; St. 1954, c. 681, § 5; and St. 1956, c. 630. The section now provides that upon the record before the Appellate Tax Board, the "decision of the board shall be reviewed [by this court] in accordance with the standards for review provided in paragraph (8) of section fourteen of chapter thirty A [the State administrative procedure act] . . . ."

[3] Statute 1919, c. 355, made a comprehensive revision of prior Massachusetts corporation franchise taxes on the basis of 1918 Senate Doc. No. 28, and 1919 Senate Doc. No. 313, and experience with two temporary World War I excises, St. 1918, c. 253 (which, unlike § 32, excluded net income from interstate commerce from consideration, see *H. P. Hood & Sons* v. *Commonwealth*, 235 Mass. 572, 575–576), and c. 255; St. 1919, c. 342. See for the history of Massachusetts corporation taxes, Nichols, Taxation in Massachusetts (3d ed.) pages 39–51, 249–251, 549, 576–593, 605–610, 613–623.

[4] Section 32 as amended in 1939 reads in part: ". . . every domestic business corporation shall pay annually an excise equal to the sum of the following . . .: — (1) An amount equal to five dollars per thousand upon the value of its corporate excess or . . . upon the value of such of its tangible property situated in the commonwealth on said day as is not subject to local taxation nor taxable under section sixty-seven, whichever is higher. (2) An amount equal to two and one half per cent of its net income determined to be taxable in accordance with the provisions of this chapter. Liability for such excise shall be incurred by corporate existence at any time within the taxable year . . . ." A recent amendment (St. 1956, c. 550, § 4) is not here applicable. There is no occasion here to consider the various additional excises and surtaxes imposed on domestic corporations. See, for example, St. 1949, c. 674, §1; St. 1951, c. 386, §1. They do not affect the issues of law here involved.

[5] See G. L. (Ter. Ed.) c. 63, § 30, par. 3, as amended. The corporate excess measure of the corporation's 1953 excise is not questioned in the present appeal.

come" is defined by § 30, par. 5, as appearing in St. 1933, c. 327, § 3, as "the gross income from all sources, without exclusion, for the taxable year [here 1952], less the deductions [with certain minor exceptions not here relevant] . . . allowable by the federal revenue act applicable for said taxable year." Section 37 provides that the commissioner of corporations and taxation shall determine, in the manner provided in that section and § 38, "the part of the net income of a domestic business corporation derived from business carried on within the commonwealth." Under § 37, certain items of income, for example, interest, dividends, and capital gains (except on tangible property situated outside Massachusetts), are to be allocated to Massachusetts. The remainder of the net income is by § 38, pars. 2 and 3, to be allocated to Massachusetts (if the corporation carries on any business at all outside Massachusetts) by a formula [6] which makes use of three fractional or percentage indices, (a) tangible property in Massachusetts *related to* total property wherever situated; (b) wages and compensation paid by the corporation and assignable to Massachusetts *related to* total wages and compensation; and (c) gross receipts (mostly sales) assignable to Massachusetts *related to* total gross receipts. Equal weight is given to each index

[6] Section 38, as amended by St. 1933, c. 342, § 3, reads in part: "Income of the classes described in the preceding section having been allocated, the remainder of the net income . . . shall be allocated as follows: . . . 2. If the corporation carries on any business outside the commonwealth, the said remainder shall be divided into three equal parts: (a) Of one third, such portion shall be attributed to business carried on within the commonwealth as shall be found by multiplying said third by a fraction whose numerator is the value of the corporation's tangible property situated within the commonwealth and whose denominator is the value of all the corporation's tangible property wherever situated. . . . [Clause (b) contains a similar provision for allocation of "another third" in accordance with compensation and wages.] (c) Of the remaining third, such portion shall be attributed to business carried on within the commonwealth as shall be found by multiplying said third by a fraction whose numerator is the amount of the corporation's gross receipts from business assignable to this commonwealth as hereinafter provided, and whose denominator is the amount of the corporation's gross receipts from all its business. . . . 6. The amount of the corporation's gross receipts from business assignable to this commonwealth shall be the amount of its gross receipts for the taxable year from (a) sales, except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside the commonwealth and sales otherwise determined by the commissioner to be attributable to the business conducted on such premises . . . ."

by dividing the net income into thirds and allocating one third in accordance with each index. No tax is imposed on, or directly measured by, property, wages, or gross receipts. These items are merely used "in combination" as component parts of a single formula for the allocation of *net* income. See discussion by Rugg, C.J., in *Alpha Portland Cement Co.* v. *Commonwealth,* 244 Mass. 530, 554–555. Paragraph 6 of § 38 provides in part that a "corporation's gross receipts from business assignable to this commonwealth shall be . . . its gross receipts for the taxable year from . . . sales, except those negotiated . . . in behalf of the corporation by agents . . . chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside the commonwealth." [7]

Breck does not question the allocation of the two third parts of its 1952 net income which were allocated in proportion to tangible property and wages. It complains only of the allocation of that one third part of net income assigned under § 38, pars. 2 (c) and 6, in accordance with gross receipts.

The Appellate Tax Board found that Breck's 1952 gross sales (after returns and allowances) were in effect divided into four groups:

(a) Receipts [admittedly assignable to Massachusetts] including certain sales by a Massachusetts sales office to Massachusetts customers delivered from a Massachusetts point to another Massachusetts point . . $343,425.77

"(b) Sales [assignment here in dispute] by salesmen resident in Massachusetts to out-of-State . . . customers, delivery being made outside Massachusetts from stock in Massachusetts . . . . . . . . 155,289.87

"(c) Sales [assignment here in dispute] by salesmen resident outside Massachusetts to out-of-State . . . customers, delivery being made outside of Massachusetts from stock in Massachusetts . . . . . . 3,101,533.66"

---

[7] General Laws (Ter. Ed.) c. 63, § 39, as amended (see also § 42A), imposes on each foreign corporation a similar excise "with respect to the . . . doing of business by it within the commonwealth" measured in part by its net income allocated to Massachusetts under § 41, which (after allocating wholly to Massachusetts gains from selling Massachusetts tangible property and interest received in Massachusetts) assigns the remainder of corporate net income in accordance with § 38, pars. 2 to 9. The two excises on domestic (§ 32) and foreign (§ 39) corporations, introduced originally by St. 1919, c. 355, were designed to place "both domestic and foreign corporations on common ground as to taxation except so far as essential differences require different treatment in details." *Alpha Portland Cement Co.* v. *Commonwealth,* 244 Mass. 530, 544–545, discussed below.

State Tax Commission *v.* John H. Breck, Inc.

(d) Sales [admittedly *not* assignable to Massachusetts] by Breck's New York sales office to out-of-State dealers and customers by nonresident salesmen, delivery being made outside Massachusetts from stock in Massachusetts ($623,298.32) and by an out-of-State sales office to out-of-State customers from stock out-of-State ($3,636,767.07) . . . . . . $4,260,065.39

Total gross receipts . . . . . . $7,860,314.69

The commission assigned to Massachusetts the receipts listed in items (a), (b), and (c) above and treated as gross receipts from outside Massachusetts the sales listed in item (d). The fraction representing the part assigned to Massachusetts of the one third of *net* income allocated on the basis of gross receipts was thus equal to about 45% derived as follows:

$$\frac{\text{(a) } \$343,425.77 \text{ plus (b) } \$155,289.87 \text{ plus (c) } \$3,101,533.66}{\$7,860,314.69}$$

The Appellate Tax Board found that the disputed items (b) and (c) above represented "sales in interstate commerce" and ruled that these sales "could not be used as a basis for a tax on gross receipts." This determination resulted in an assignment by the board of gross receipts to Massachusetts producing an allocation fraction of $\frac{\$343,425.77}{\$7,860,314.69}$ equal to about 4.4% for this third of net income.[8]

---

[8] The total effect of the 1953 application to Breck of the formula contained in § 38 for the allocation of the "remainder" of 1952 net income may be summarized as follows:

| Type of Ratio. | On Basis of Commission's Contention. | On Basis of the Corporation's Contentions and the Appellate Tax Board's Decision. |
|---|---|---|
| | Per Cent assigned to Massachusetts. | Per Cent assigned to Massachusetts. |
| Tangible property . . . | 80 | 80 |
| Compensation (wages) . . | 88 | 88 |
| Gross receipts . . . | 44 | 4 |
| | 212 | 172 |
| Average ratio applied to remainder of net income . | $\frac{212}{3} = 71\%$ | $\frac{172}{3} = 57\%$ |

There is a minor discrepancy between the figures used in the application for abatement and those stipulated by the parties. The latter figures have been used.

Except as already stated, there were no express findings by the board with respect to the extent, if any, to which the salesmen, who effected the sales involved in items (b) and (c), were chiefly connected with or sent out from corporate premises of Breck outside Massachusetts. There were board findings that the territory served by Breck involved in items (b) and (c) was outside Massachusetts; that a "part of the sales was made by salesmen resident in Massachusetts and a part by salesmen resident outside of Massachusetts"; and that the "merchandise involved in these appeals was shipped from stock in Massachusetts." There was, however, before the board an oral concession by counsel for Breck made at the hearing "that the only issue . . . is with reference to [items] . . . (b) and (c) which are the sales billed from the Massachusetts office by salesmen who *if connected anywhere are connected with the Massachusetts office,* but they are interstate sales" (emphasis supplied).

The commission contends that the Appellate Tax Board erred in its conclusion that the gross receipts from items (b) and (c) "are not to be included in the computation of the excise" and "in having considered the assessment . . . as a direct tax on gross receipts rather than an excise measured by applying the statutory formula . . . to a portion of the net income of" Breck. The commission concedes that the sales included in items (b) and (c) "are sales in interstate commerce."

We thus have presented these questions: (1) Does the statutory net income allocation formula (§§ 37, 38) require treating the sales included in items (b) and (c) as sales attributable to Breck's corporate existence and activity in Massachusetts by including them in the numerator of the statutory fraction; and (2) if the statutory formula requires such inclusion of these sales in the Massachusetts numerator, is this inclusion in violation of the commerce clause of the Federal Constitution (art. 1, § 8)?

1. The tax involved is "a single excise measured by the sum of a percentage on its corporate excess added to a per-

centage on its net income as those terms are defined in the act." Originally (and until 1933) it was imposed upon "the carrying on or doing of business." *Springdale Finishing Co.* v. *Commonwealth*, 242 Mass. 37, 40–41. See *Fore River Shipbuilding Corp.* v. *Commonwealth*, 248 Mass. 137, 140–141; *Frothingham Buildings* v. *Commonwealth*, 249 Mass. 290, 292–293; *Carlos Ruggles Lumber Co.* v. *Commonwealth*, 261 Mass. 450, 452–453; *Queens Run Refractories Co. Inc.* v. *Commonwealth*, 270 Mass. 19, 23–24; *Thomson Electric Welding Co.* v. *Commonwealth*, 275 Mass. 426, 429, et seq. See also *George S. Colton Elastic Web Co.* v. *United States*, 116 Fed. (2d) 202, 204–205 (C. C. A. 1). However, by St. 1933, c. 342, § 1, the words theretofore in § 32 (imposing the excise on domestic corporations) "with respect to the carrying on or doing of business" were deleted with the purpose [9] of changing the tax to an excise on the privilege of each domestic business corporation to engage in business based upon its corporate existence (and possession of its corporate franchise) during the taxable year, without regard to whether any business was done. In the *Carlos Ruggles Lumber Co.* case, at pages 452–453, it was said that the excise was "not a tax on tangible property . . . not an income tax." [10]

The excise imposed by § 32 is not a tax upon or measured by *gross* receipts. So far as its net income measure is concerned, the tax under § 32 will be zero (a) unless a domestic

[9] See recommendation of the commissioner of corporations and taxation, 1933 House Docs. Nos. 69, pages 3–5; 74; 1380; 1480; Nichols, Taxation in Massachusetts (3d ed.) pages 600–601. Prior to 1919, the usual Massachusetts corporation excise had been upon the "right to exist and carry on business as a corporate entity," that is, as a Massachusetts corporation. *Farr Alpaca Co.* v. *Commonwealth*, 212 Mass. 156, 159–162, especially at page 162. See, for example, R. L. c. 14, §§ 37–40; St. 1909, c. 490, Part III, § 43; *Eaton, Crane & Pike Co.* v. *Commonwealth*, 237 Mass. 523, 526–529.

Since the 1933 revision, the excise, imposed by § 32 with respect to a domestic corporation, has been discussed in *Commissioner of Corporations & Taxation* v. *Bristol County Kennel Club, Inc.* 301 Mass. 27, 29, in which there was no occasion to consider with precision the nature of the excise.

[10] See, as to the interpretation of the generally similar excise still imposed by § 39 "with respect to the carrying on or doing of business . . . within the commonwealth" by foreign corporations, *Commissioner of Corporations & Taxation* v. *Ford Motor Co.* 308 Mass. 558, 563–564, and cases cited. See also *National Leather Co.* v. *Commonwealth*, 256 Mass. 419, 425, affirmed sub nomine *National Leather Co.* v. *Massachusetts*, 277 U. S. 413, 423.

corporation subject to § 32 has a *net* income, in the sense that its gross income exceeds the expenses (with minor exceptions) allowed as deductions under the Federal income tax law, and (b) unless some of that net income, if there is a net income, is allocable to Massachusetts under the apportionment formula found in §§ 37 and 38.[11]

The purpose of the formula (§§ 37 and 38) is, of course, to limit the net income measure of the excise to that reasonably attributable to activities within or closely associated with Massachusetts, so as fairly to reflect the annual benefit to the taxed corporation of its corporate privileges (including their exercise, if exercised) under Massachusetts law. In giving equal weight to percentage factors of (a) tangible property, (b) wages and other compensation paid, and (c) gross receipts, the Massachusetts formula is similar to formulae in use in various other States.[12]

With respect to the one-third weight given to gross receipts, gross receipts from sales are not to be allocated outside of Massachusetts (as by statutes of certain other States) except where the sales are clearly indentifiable with corporate sales offices in other States through having been "negotiated . . . by [corporate] agents . . . connected with or sent out from premises . . . owned or rented by the corporation outside the commonwealth." The statutory language of § 38, par. 6, is explicit and must be applied in accordance with its natural meaning (see *Carlos Ruggles Lumber Co.* v. *Commonwealth,* 261 Mass. 450, 455) to the extent that constitutional considerations permit.

Few court decisions have discussed the allocation formula since its enactment thirty-eight years ago. In *Carlos*

[11] The taxes imposed by § 32 on domestic corporations are obviously not imposed in direct relationship to the respective gross receipts of the corporations subject to the tax. For example, assuming all net income of each of two corporations to be assignable to Massachusetts, corporation A with a gross income of $1,000,000 and a net income (after deductions) of only $10,000 would pay at the basic $2\frac{1}{2}\%$ rate an excise of $250; while corporation B with a gross income of $500,000 and a net income of $20,000 would pay an excise of $500.

[12] See Altman & Keesling, Allocation of Income in State Taxation (2d ed.) 89, 97–159, and table at pages 158–159; Silverstein, Problems of Apportionment in Taxation of Multistate Business, 4 Tax L. Rev. 207, 209, 211, 217, 259.

*Ruggles Lumber Co.* v. *Commonwealth,* 261 Mass. 450, 454–456, this court passed upon a 1924 excise on a domestic corporation doing some intrastate business in Massachusetts and apparently a volume of business, largely in interstate commerce,[13] in other States. This court (at page 455) said, "It is not essential to interstate commerce that persons engaged in it have established places of business in the several States or in more than a single State" and held that the petitioner "was subject to . . . [a Massachusetts] excise tax but was entitled to have that tax allocated on the basis of carrying on business both inside and outside of this Commonwealth," obviously because it conducted interstate commerce outside Massachusetts. No consideration was given to the details of the allocating method prescribed in § 38. In *Alpha Portland Cement Co.* v. *Commonwealth,* 244 Mass. 530, 555,[14] it was said that, in considering the effect of the tripartite formula based upon property, wages, and gross receipts, the question "is not whether a subsidiary percentage standing *alone* may impinge upon property outside the Commonwealth, but whether the use of *all* the percentages makes the final result a tax which violates constitutional guarantees" (emphasis supplied).

Breck relies principally upon *Commissioner of Corporations & Taxation* v. *Ford Motor Co.* 308 Mass. 558, where this court considered the minimum excise on each of a class of foreign business corporations, imposed by G. L. (Ter. Ed.) c. 63, § 39C,[15] amounting to "one twentieth of one per cent

---

[13] The interstate business in the *Carlos Ruggles Lumber Co.* case consisted of the "purchase of commodities in one State and the sale of the same in another State and the shipping and transportation thereof . . . all accomplished through the medium of salesmen resident and nonresident" (see pages 451–452, 455). The Ruggles company at no time had a lumber yard or supply of lumber in Massachusetts for sale either within or outside Massachusetts (see page 452).

[14] See *S. C.* 248 Mass. 156, reversed sub nomine *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203. See also *W. & J. Sloane* v. *Commonwealth,* 253 Mass. 529.

[15] A special minimum excise (not involved in this case) is imposed on certain domestic business corporations by G. L. (Ter. Ed.) c. 63, § 32A, as amended, and on certain foreign corporations by § 39C as amended. It is assessed only in the event that such minimum excise on a particular corporation exceeds its usual excise computed under whichever section (§ 32 in the case of domestic corporations and § 39 in the case of foreign corporations) is

of . . . gross receipts from business assignable to this commonwealth as defined in" § 38, par. 6. Such *gross* receipts assignable to Massachusetts are thus used in the *Ford* case directly as the measure of the excise imposed by § 39C rather than as a means of allocation of *net* income as in the case of the excises imposed by § 32 and § 39.[16]  To have construed § 38, par. 6, as including (for the purpose of § 39C), as receipts assignable to Massachusetts, gross receipts from interstate sales negotiated through a Massachusetts office would have involved measuring *directly* by gross receipts from interstate commerce an excise on a foreign corporation, for the privilege of doing intrastate business in Massachusetts. This court, in the *Ford* case, held (at page 568) that "a State may not put a direct and immediate burden upon interstate commerce in the form of a tax, without apportionment, upon the *gross* proceeds derived from such commerce" and (at page 569) "may not exact an excise not apportioned to intrastate activities but measured by a percentage of the entire *gross* receipts derived from commercial activities extending beyond the boundaries of the taxing State" (emphasis supplied). The decision thus held that § 38, par. 6, could not be applied, to the full extent warranted by its language, to bring any interstate business within the Ford company's gross receipts assignable to Massachusetts *for the purposes of the minimum excise im-*

applicable. Section 39C (prior to its amendment by St. 1956, c. 550, § 10) read: "Every foreign corporation deriving its profits principally from the ownership, sale, rental or use of real estate or tangible personal property shall pay annually, with respect to the carrying on or doing of business by it, a total excise under this chapter not less in amount than one twentieth of one per cent of said corporation's gross receipts from business assignable to this commonwealth as defined in clause six of section thirty-eight."

[16] Section 39C was not a part of the revised excise tax law adopted by St. 1919, c. 355.  It was first enacted by St. 1923, c. 424, § 4, together with a similar minimum excise (see § 2 of the 1923 act) on certain domestic corporations found in § 32A (see *Essex Theatres Co.* v. *Commonwealth*, 265 Mass. 210; *Commissioner of Corporations & Taxation* v. *J. G. McCrory Co.* 280 Mass. 273, 279) to provide an effective minimum excise on corporations doing business in Massachusetts which otherwise would pay little or no excise. 1923 House Doc. No. 1240, pages 29, 58.  See 1923 Senate Doc. No. 323, pages 3, 5.  In making use of § 38, par. 6, as a definition of gross receipts for the purposes of § 39C, imposing an excise measured *directly* by gross receipts, § 39C used paragraph 6 for a purpose wholly different from that for which it had originally been intended.  For this new purpose paragraph 6 could not be employed, so far as concerns gross receipts from interstate commerce, for reasons stated later in this opinion.

*posed by* § *39C*, because cases decided by the Supreme Court
of the United States (see pages 568–569) determined that a
tax like that in § 39C, *directly* measured by *gross* receipts,
would impose an unconstitutional burden on interstate com-
merce.  This court in the *Ford* case did not pass upon the
validity of assigning to Massachusetts, in accordance with
the plain language of § 38, par. 6, gross receipts from sales
negotiated through a Massachusetts office for the wholly
different purpose of allocating a fair proportion of *net*
income to Massachusetts as a measure of an excise under
§ 32 upon a domestic [17] corporation.

In this state of the authorities, we construe § 38, par. 6
(as applied, for purposes of the excise imposed by § 32, to the
allocation to Massachusetts of a share of the *net* income of a
*domestic* corporation), *first*, to require including in "gross
receipts . . . assignable to" Massachusetts under para-
graph 6 the gross receipts from all sales which are not attribu-
table to efforts closely associated with a corporate sales
office outside of Massachusetts, and, *second*, to attribute re-
ceipts from sales, in either interstate or intrastate com-
merce, to the sales offices with which the salesmen effecting
them are affiliated.  Of course, if § 38, par. 6, thus con-
strued, will operate to impose an unconstitutional burden
in a particular case, it can be given only the maximum
scope which will still leave its application within constitu-
tional limits, but we think that the legislative intention
was to apply the section *literally* to the full extent permitted
by constitutional principles.  See *W. & J. Sloane* v. *Com-
monwealth*, 253 Mass. 529, 534; *Dexter* v. *Commissioner of
Corporations & Taxation*, 316 Mass. 31, 70.

---

[17] In the case of a foreign corporation doing intrastate business in Massa-
chusetts and also business elsewhere, the commissioner is authorized by § 42,
as amended by St. 1933, c. 342, § 5 (see further amendments by St. 1953,
c. 654, § 59, and St. 1956, c. 550, § 11), to apply an appropriate alternate
method of allocating net income (for the purposes of the tax under § 39)
where the normal formula "is not reasonably adapted to approximate" the
income derived from doing business in Massachusetts.  No such alternative
exists with respect to the excise on a domestic corporation, beyond the provi-
sions of § 38, par. 3, not here applicable.  Section 42 thus provides, in the
case of foreign corporations, a method of avoiding any possible unconstitu-
tional burdens, in particular cases, which might result from giving full scope
to the language of § 38, par. 6.

Upon this construction of the allocation formula, the question of fact under the statute to be determined by the Appellate Tax Board was whether the gross receipts from sales (in amount [b] $155,289.87 and [c] $3,101,533.66), which Breck contends were wrongly assigned under § 38, par. 6, to Massachusetts, were negotiated by agents "chiefly situated at, connected with or sent out from [corporate] premises . . . outside" Massachusetts. The board has not made express findings on this matter. However, in the absence of anything contrary to the concession of counsel on this matter, it is apparent that the board acted upon the basis that the sales involved in items (b) and (c) were made by salesmen who (in the language of the concession of counsel) "if connected anywhere are connected with the Massachusetts office." No other conclusion would be warranted by the evidence, which showed, among other things, that, with respect to the disputed sales, reports which were necessary were made by the salesmen to the Massachusetts office, which in turn gave them necessary instructions. Accordingly, we deal with the case as one in which Breck has not sustained the burden resting upon it of showing that the disputed sales in items (b) and (c) were negotiated by salesmen chiefly connected with a sales office outside Massachusetts.

2. We must also pass upon the constitutional issues raised by Breck in view of the fact that the Appellate Tax Board has ruled that no gross receipts from interstate sales carried out by shipments originating in Massachusetts may be allocated to Massachusetts for the purposes of the formula for the apportionment of net income contained in §§ 37 and 38. If this ruling is correct, the decision of the board must be sustained.

Under the decisions of the Supreme Court of the United States, real doubt [18] continues to exist about the limits of

[18] Discussions of the perplexing problems raised by the decisions will be found in the following authorities: Powell, More Ado about Gross Receipts Taxes, 60 Harv. L. Rev. 501, 710, especially at pages 504–505, 508, 736; Hellerstein, State Franchise Taxation of Interstate Businesses, 4 Tax L. Rev. 95, 103 et seq.; Altman & Keesling, Allocation of Income in State Taxation

proper State taxation of corporations engaged in both intrastate and interstate commerce. See *Freeman* v. *Hewit*, 329 U. S. 249, 252. Compare *Opinion of the Justices*, 332 Mass. 785, 789. However, certain principles have been established which are binding upon us.

(A) A State may not impose an excise (even one which does not discriminate against interstate commerce), at least upon a foreign corporation,[19] for the privilege of doing *exclusively* an interstate business within its borders. *Cheney Brothers Co.* v. *Massachusetts*, 246 U. S. 147, 153. *Alpha Portland Cement Co.* v. *Massachusetts*, 268 U. S. 203. *Spector Motor Service, Inc.* v. *O'Connor*, 340 U. S. 602, 609.[20] See also *Crew Levick Co.* v. *Pennsylvania*, 245 U. S. 292; *Ozark Pipe Line Corp.* v. *Monier*, 266 U. S. 555. This principle does not apply to the present case because Breck (1) is a Massachusetts corporation maintaining its corporate existence here; (2) does all its manufacturing in Massachusetts as an intrastate activity; and (3) carries on substantial intrastate sales in Massachusetts, as well as many important functions of a local character in administering all its sales operations.

(B) A State occupation tax measured *directly* by the *gross* receipts from interstate commerce, unapportioned, is invalid, at least where the privilege of engaging in the occupation,

---

(2d ed.) 11, 13–14, 19–27, 33, 37–40, 61–66; 89 et seq.: Anderson, State Taxation of Interstate Commerce, Wash. Univ. L. Q. (1952) 1; Hartman, State Taxation of Interstate Commerce, Wash. Univ. L. Q. (1953) 233, especially at pages 240–245; Sinon, How Can the States Tax Interstate Commerce? 32 Taxes 914, 916 et seq.; Johnson, Multi-State Taxation of Interstate Sales, 27 Cal. L. Rev. 549, 561 et seq.; Barrett, "Substance" vs. "Form" in the Application of the Commerce Clause to State Taxation, 101 Univ. of Pa. L. Rev. 740, 768 et seq., 778–780, 790; Notes, 54 Colum. L. Rev. 261, 271 et seq.; 56 Yale L. J. 898, 902 et seq.

[19] The problem will seldom arise with respect to a domestic corporation, for, in maintaining its corporate existence, it normally will engage in some activities, wholly intrastate in character, which will be the legitimate subject of an excise. See, for example, *Queens Run Refractories Co. Inc.* v. *Commonwealth*, 270 Mass. 19, 22–24. Compare *Atlantic Lumber Co.* v. *Commissioner of Corporations & Taxation*, 292 Mass. 51, 53–55 (and cases cited), affirmed 298 U. S. 553, 555–556.

[20] The *Spector* case rejected the strong intimation in *Memphis Natural Gas Co.* v. *Beeler*, 315 U. S. 649, 656, that a nondiscriminatory State excise on such a foreign corporation measured by net income, duly apportioned, would be valid, even though the corporation did only an interstate business within the taxing State.

including interstate commerce, is the subject of the tax.
*Fisher's Blend Station, Inc.* v. *State Tax Commission*, 297
U. S. 650. *Puget Sound Stevedoring Co.* v. *State Tax Commission*, 302 U. S. 90, 92–94 (but compare pages 94–95).[21]
*Michigan-Wisconsin Pipe Line Co.* v. *Calvert*, 347 U. S. 157,
166 (tax at a fixed rate per unit of gas on the occupation of
"gathering gas" for the purpose of immediate interstate
shipment held invalid). See *Memphis Steam Laundry
Cleaner, Inc.* v. *Stone*, 342 U. S. 389, 392–393. See also
*Nippert* v. *Richmond*, 327 U. S. 416. Compare *Memphis
Natural Gas Co.* v. *Stone*, 335 U. S. 80, 89. Compare also
*American Manuf. Co.* v. *St. Louis*, 250 U. S. 459, 463 (sustaining a license tax on manufacturing in St. Louis measured
by value of manufactured goods sold, payable after value
established by sale).

(C) A State may not tax directly sales or the gross receipts from sales in interstate commerce, at least without
apportionment, or unless the taxable event is one which is
adequately separated from the actual movement in interstate commerce. *Freeman* v. *Hewit*, 329 U. S. 249 [22] (where
the court held that an Indiana tax on gross income could
not be imposed upon the gross proceeds of the sale of securities in New York). Compare *International Harvester
Co.* v. *Department of Treasury*, 322 U. S. 340, 348 (Indiana
gross income tax upheld with respect to proceeds of certain
sales having important incidents in Indiana). In the present

---

[21] See also *Cooney* v. *Mountain States Telephone & Telegraph Co.* 294 U. S.
384 (tax measured by number of telephone instruments); *J. D. Adams Manuf.
Co.* v. *Storen*, 304 U. S. 307, 311–312 (income tax on gross receipts unapportioned); *Gwin, White & Prince, Inc.* v. *Henneford*, 305 U. S. 434, 438–440
(tax on doing business as a distributor in interstate commerce measured by
gross receipts); *Joseph* v. *Carter & Weekes Stevedoring Co.* 330 U. S. 422, 427.
Compare *Pacific Telephone & Telegraph Co.* v. *Tax Commission*, 297 U. S. 403,
414–417; *Western Live Stock* v. *Bureau of Revenue*, 303 U. S. 250, 254–261;
*Memphis Natural Gas Co.* v. *Stone*, 335 U. S. 80; *Norton Co.* v. *Department
of Revenue*, 340 U. S. 534 (Illinois occupation tax on gross receipts of retailers
upheld with respect to sales negotiated by Massachusetts corporation through
its Chicago office); *Field Enterprises, Inc.* v. *State*, 47 Wash. (2d) 852, affirmed
per curiam sub nomine *Field Enterprises, Inc.* v. *Washington*, 352 U. S. 806.

[22] In the concurring opinion of Mr. Justice Rutledge (at pages 264 et seq.)
the cases which have sustained and condemned, respectively, State taxes on
gross receipts are collected, and (at page 283) cases involving sales and use
taxes on property which has moved in interstate activity are set forth.

case the excise is not imposed with respect to any activity which is part of the stream of interstate commerce, but rather is laid on the existence of the corporate privileges. Also, as has already been said, the Massachusetts excise on Breck is measured by *net* income, *not* gross income. Accordingly the principles mentioned in this paragraph (C) and in paragraph (B) above are not applicable here.

(D) A State tax which discriminates against interstate commerce is invalid. *Memphis Steam Laundry Cleaner, Inc.* v. *Stone*, 342 U. S. 389, 394–395. *West Point Wholesale Grocery Co.* v. *Opelika*, 354 U. S. 390. Compare, however, *Interstate Busses Corp.* v. *Blodgett*, 276 U. S. 245, 251 (holding that a taxpayer complaining of discrimination against it and against interstate commerce must show "that in actual practice the tax of which it complains" in fact is discriminatory in economic effect). In the present case there is no indication whatsoever of discrimination against interstate commerce.

The commission relies upon those decisions of the Supreme Court of the United States in which it has been stated consistently, in substance, that a State tax (a) upon corporate *net* income or (b) upon a privilege granted by the taxing State, measured by corporate *net* income, reasonably apportioned to activities of the taxpayer within the taxing State, will not impose a direct or constitutionally objectionable burden upon interstate commerce even if income from interstate commerce is taken into account. In *United States Glue Co.* v. *Oak Creek*, 247 U. S. 321, the court considered a Wisconsin general income tax upon a Wisconsin corporation's net income including that derived from business transacted within Wisconsin, determined by an allocation formula (page 324). Within income assigned to Wisconsin were included (page 325) the taxpayer's receipts from goods sold to customers outside Wisconsin from its Wisconsin factory and from goods manufactured in Wisconsin shipped to sales branches outside Wisconsin and there sold, all presumably interstate commerce. The court said (at page 329) that the tax "can not be deemed to be so

direct a burden upon plaintiff's . . . business as to amount to an unconstitutional interference with . . . commerce among the States. It was measured not by the gross receipts, but by the net proceeds from this part of plaintiff's business, along with a like imposition upon its income derived from other sources, and in the same way that other corporations doing business within the State are taxed upon that proportion of their income derived from business transacted and property located within the State, whatever the nature of their business." In distinguishing the *Crew Levick* case (245 U. S. 292) the court said (at pages 328–329), "The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is . . . substantial, and it affords a . . . workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. . . . A tax upon the net profits . . . does not arise at all unless a gain is shown over and above expenses and losses . . . ."

*Underwood Typewriter Co.* v. *Chamberlain*, 254 U. S. 113, 118, involved a Connecticut tax upon or measured by the net income of domestic and foreign corporations earned from business carried on within Connecticut, ascertained by apportionment to determine "such proportion of the whole net income, as the . . . value of the . . . tangible . . . property within the State bears to the . . . value of all the . . . tangible . . . property of the company." The tax (at pages 119–120) was sustained although the taxpayer's "profits may have been derived in part, or indeed mainly, from interstate commerce."

In *Hump Hairpin Manuf. Co.* v. *Emmerson*, 258 U. S. 290, 292–296, the court sustained a capital stock tax computed on the basis of "the proportion of capital stock . . . represented by property located and business transacted in . . . Illinois, which proportion shall be determined by averaging the percentage of the total business . . . trans-

acted in Illinois with the percentage of the total tangible property" in Illinois, essentially two of the three allocation factors, namely property and gross receipts, used in the Massachusetts excise (§§ 32, 37, 38) here in issue. Interstate sales (see pages 292, 294) through salesmen working out of an Illinois sales office were included in Illinois business for the purpose of the allocation formula. See, to the same effect, *International Shoe Co.* v. *Shartel*, 279 U. S. 429, 433; *Western Cartridge Co.* v. *Emmerson*, 281 U. S. 511, 514–515. See also *West Publishing Co.* v. *McColgan*, 27 Cal. (2d) 705, affirmed 328 U. S. 823, rehearing denied 329 U. S. 822.

*Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Commission*, 266 U. S. 271, applied a New York franchise tax, "levied for the privilege of doing business in" New York, and measured by net income, to a British corporation selling ale through branch offices in New York. Under the taxing statute a part of total net income was to be apportioned to New York in accordance with stated criteria, including (among others) tangible property and accounts receivable. The tax was sustained largely upon the authority of the *Underwood Typewriter* case. The court (at page 282) pointed out that the taxpayer "carried on the unitary business of manufacturing and selling . . . in which its profits were earned by a series of transactions beginning with the manufacture in England and ending in sales in New York and other places — the process of manufacturing resulting in no profits until it ends in sales" and indicated that New York was justified in attributing (through the operation of the allocation formula) to itself "a just proportion of the profits . . . from such unitary business." See *John Deere Plow Co. of Moline* v. *Franchise Tax Board*, 38 Cal. (2d) 214, 221–225, 229–230, appeal dismissed for want of a substantial Federal question, 343 U. S. 939; *North American Cement Corp.* v. *Graves*, 269 N. Y. 507, affirmed 299 U. S. 517.

As has been stated, *Alpha Portland Cement Co.* v. *Massachusetts*, 268 U. S. 203, condemned the Massachusetts excise imposed on foreign corporations by § 39, as applied to a foreign corporation engaged *exclusively* in interstate com-

merce here.   However (at page 218) the court said, "The
local business of a foreign corporation may support an
excise measured *in any reasonable way* [emphasis supplied],
if neither interstate commerce nor property beyond the
State is taxed," and referred to the *Underwood Typewriter*
case with apparent approval.

*Matson Navigation Co.* v. *State Board of Equalization,*
297 U. S. 441, 444, involved a California excise on each
business corporation "for the privilege of exercising its cor-
porate franchises within" California "measured by its net
income" which had been applied to a California corpora-
tion engaged in intrastate, interstate, and foreign business.
The court held that "net income justly *attributable to
all classes of business done within the State* may be used
as the measure of a tax imposed to pay the State for the
use therein of the corporate franchises granted by it"
(emphasis supplied).[23]   A similar result was reached in
*Memphis Natural Gas Co.* v. *Beeler,* 315 U. S. 649, 656,
dealing with an excise, measured "by the net earnings of
the business as well as by the capital employed," imposed
by Tennessee upon a foreign gas transmission company,
viewed by the court as doing a partly intrastate business in
Tennessee (see note 20, *supra*).   See also *Butler Brothers* v.
*McColgan,* 315 U. S. 501, 506–508, approving an allocation
formula, much like that used in Massachusetts, under the
due process clause of the Fourteenth Amendment.

*International Harvester Co.* v. *Evatt,* 329 U. S. 416, involved
an Ohio franchise tax for the "privilege of doing business"
in Ohio, as applied to a foreign corporation (see page 418)
there operating two large factories, warehouses and retail
stores, as well as factories, warehouses and stores in other
States.   The tax was measured by the value of the tax-

---

[23] The court's conclusion that a State excise upon a corporation measured
by *net* income (including that from interstate commerce) does not
unconstitutionally place a burden on interstate commerce may find a parallel
in the decisions permitting a nondiscriminatory State excise on a corporation
measured by its net income or net worth, taking into account, in computing
net income, the income from tax exempt bonds of the United States or, in
computing net worth, the value of such tax exempt bonds.   *Werner Machine
Co. Inc.* v. *Director of Taxation,* 350 U. S. 492, 493–494, and cases cited.

payer's capital stock. One half was apportioned on the basis of a fraction (at pages 419–420) "the numerator of which is the value of all the taxpayer's Ohio property, and the denominator of which is the total value of all its property . . . . The other half is multiplied by another fraction whose numerator is the total value of the 'business done' in the State and whose denominator is country-wide business. . . . In the 'business done' numerator . . . [Ohio] included as a part of Ohio business an amount equal to the sales proceeds of a large part of the goods manufactured at . . . [the] Ohio plants, no matter where the goods had been sold or delivered. A part of the measure of the tax is consequently an amount equal to the sales price of Ohio-manufactured goods sold and delivered to customers in other states."[24]  The court (at pages 420–423) upheld the excise, under both the commerce clause (art. 1, § 8) and the due process clause (Fourteenth Amendment) of the Federal Constitution, as a tax on intrastate activities legitimately measured by the value of the goods produced by the Ohio factories, saying (at page 421), "Nor does the fact that a computation such as that under Ohio's law includes receipts from interstate sales affect the validity of a fair apportionment [citing, among others, the *Hump Hairpin* and *Underwood Typewriter* cases]." The court went on to say (pages 421–422) that "it clearly appears . . . that the whole purpose of the . . . formula was to arrive, without undue complication, at a fair conclusion as to what was the value of the intrastate business for which its franchise was granted. . . . Plainly Ohio sought to tax only what she was entitled to tax, and there is nothing about application of the formula in this case that indicates a potentially unfair result under any circumstances. . . . [T]his Court has long realized the practical impossibility of a state's achieving

[24] The taxpayer apparently accounted for the business conducted by the taxpayer's sales agencies separately from its manufacturing operations and the court assumed (at page 420) that it included in Ohio business "sales made by Ohio branches to Ohio customers" shipped to those "customers from out-of-Ohio factories," treating these sales as intrastate activities. The decision expressly (page 421) did not decide whether also sales to Ohio customers from out of State branches could have been included.

a perfect apportionment of expansive, complex business activities . . . and has declared that 'rough approximation rather than precision' is sufficient." In the *Spector* case (340 U. S. 602, 609–610. See note 20, *supra*), although holding that a Connecticut excise could not be imposed on a foreign corporation with respect to the privilege of doing an exclusively interstate business in Connecticut, the court said, "Our conclusion is not in conflict with the principle that, where a taxpayer is engaged both in intrastate and interstate commerce, a state may tax the privilege of carrying on intrastate business and, within reasonable limits, may compute the amount of the charge by applying the tax rate to a fair proportion of the taxpayer's business done within the state, including both interstate and intrastate [citing the *International Harvester* case, 329 U. S. 416, and the *Atlantic Lumber* case, 298 U. S. 553, involving the Massachusetts corporation excise]."

In *Commonwealth* v. *Bayuk Cigars, Inc.* 345 Pa. 348, affirmed per curiam sub nomine *Bayuk Cigars, Inc.* v. *Pennsylvania*, 318 U. S. 746, the courts approved a Pennsylvania excise based upon a net income allocation formula bearing close resemblance to that contained in § 38, pars. 2, 6, under which gross receipts from sales were not to be allocated to another State, absent the existence and use (in negotiating the sales) of a formal out-of-State corporate office. The sales in issue in the *Bayuk* case (see 345 Pa. at pages 356–357) were made by salesmen "supervised, directed and controlled by the home office in Philadelphia, from which . . . they received their instructions . . . [T]heir orders were . . . shipped from . . . Pennsylvania . . . [T]he itinerant nature of their employment required them to be 'constantly traveling . . .' and . . . they must be regarded as 'not chiefly situated at, connected with, or sent out from, premises . . . owned or rented by the corporation outside the Commonwealth'." Compare *Commonwealth* v. *Continental Rubber Works*, 347 Pa. 514. The *Bayuk* case (which wholly supports the excise upon Breck in the present case) establishes that, in a formula designed to allocate net

income approximately, it is reasonable for a Legislature to assign gross receipts from sales to the formal corporate office having supervision over the salesmen who effect the sales.[25]

These decisions of the Supreme Court of the United States, as we understand them, sustain the constitutionality under the commerce clause of a State excise (like that in the present case) on a domestic corporation for possessing or exercising its corporate privileges, if measured by net income, apportioned, as in the present case, in a practical way (which need not by any means be precise) to give a reasonable and rough approximation of values attributable to the taxing State granting the privileges. The fact that net income from interstate transactions (and the value given to intrastate privileges by them) may be taken into account reasonably in the tax computations is immaterial. Accordingly, we hold that the Appellate Tax Board erred (a) in treating the tax complained of as in effect a tax measured by gross receipts from interstate commerce rather than as an excise using, as one of its measures, a part of the taxpayer's net income apportioned to Massachusetts on a basis which takes into account fairly the sales here in dispute, admittedly interstate transactions, and (b) in holding that gross receipts from interstate sales (not assignable to non-Massachusetts sales offices under § 38, par. 6) should not be taken into the Massachusetts numerator of the allocation fraction under § 38, par. 2 (c).

Breck argues that the aggregate effect of the excise as assessed by the commission is so unreasonable, as applied to it, as to come within the principle of *Hans Rees' Sons, Inc.* v. *North Carolina*, 283 U. S. 123, 134, which held that in a particular instance North Carolina had applied a formula method, "which, albeit fair on its face, operates so as to

---

[25] The work of organization of sales effort, billing, credit analysis, accounting, arranging transportation, and other similar activities obviously must ordinarily be carried on at the sales offices of manufacturing corporations and it seems permissible to assign the sales to the sales office responsible for them, at least for purposes of an allocation formula. Breck's transactions here involved were shipments from Massachusetts of goods manufactured in Massachusetts to effect sales negotiated by salesmen, not shown to be connected with or supervised by sales offices outside Massachusetts.

reach profits . . . in no just sense attributable to transactions within" North Carolina's jurisdiction.[26]  No such showing of fact has been made here by Breck.  Indeed, if the gross receipts from the disputed sales were to be excluded from the formula computation, it would result only in a reduction of the portion of Breck's 1952 *net* income assigned to Massachusetts from 71% to 57% (see note 8, *supra*).  There are no findings of fact by the Appellate Tax Board and no evidence on which could be based a ruling that an allocation to Massachusetts of 71% of net income (as required by the total effect of the statutory formula which must be viewed as a whole) necessarily resulted in overvaluation, by fourteen percentage points, of the aggregate intrastate privileges (including basic corporate existence and authority to do business, manufacture, home office supervision, maintenance of local sales office, supervision of salesmen, warehousing, shipping, and so forth) subject to tax.  The burden is clearly on Breck to establish facts which show the impropriety of the statutory formula.  See *Butler Brothers* v. *McColgan,* 315 U. S. 501, 506–508.

Breck contends also that the assignment of the disputed sales to Massachusetts for the purposes of § 38, par. 6, will involve risk of double taxation of those sales, because under pertinent Supreme Court decisions (see, for example, *McGoldrick* v. *Berwind-White Coal Mining Co.* 309 U. S. 33; *General Trading Co.* v. *State Tax Commission,* 322 U. S. 335) the States of destination of the goods sold might be able to impose taxes upon their sale or use.  The tax imposed by § 32 is not a sales tax or a use tax based upon gross receipts but an excise on corporate privileges based on a net income measure designed to reflect solely Massachusetts values.  No other State can impose a tax on those privileges or values.  See *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 260.  See also *Memphis Natural Gas Co.* v.

---

[26] See also *Panhandle Eastern Pipe Line Co.* v. *Corporation & Securities Commission,* 346 Mich. 50, 56, certiorari denied sub nomine *Michigan Corporation & Securities Commission* v. *Panhandle Eastern Pipe Line Co.* 352 U. S. 890, where the Michigan court held that the application by its commission of the Michigan statute there involved reached an arbitrary result.

*Stone,* 335 U. S. 80, 93–94, 96–97. Any minor overlapping of measures of net income, if any other State should impose a similar excise on comparable privileges of Breck to do business in that State, using a somewhat different (but similarly reasonable) net income apportionment formula, would be at most an inconsequential result of the "honest state efforts to make apportionments" of Massachusetts and such other State, intended to reach a fair approximation of the value of the respective privileges subjected to tax. Any inaccuracy would be well within the limits of action permitted to the States. *International Harvester Co.* v. *Evatt,* 329 U. S. 416, 422–423. Here there is no evidence of any potential duplication of tax burden which could raise doubt about the propriety of the excise.

3. Breck is not entitled to have any abatement of that part of its 1953 corporate excise measured by net income. The decision of the Appellate Tax Board is reversed and a decision for the State tax commission is to be entered. The State tax commission is to have costs of the appeal to this court.

*So ordered.*