ALLIED BUILDING CREDITS, INC. vs. STATE TAX
COMMISSION.

Suffolk.    April 4, 1962. — June 7, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Taxation,* Corporate excise. *Value.*

In calculating the 1955 corporate excise of a foreign corporation doing
business in Massachusetts, the Commissioner of Corporations and Taxa-
tion, for the purposes of G. L. c. 63, § 30, cl. 4, was empowered to deter-
mine by any reasonable and appropriate means the value of intangible
assets of the corporation, wherever located, "employed in . . . business
within" Massachusetts.  [508]

A foreign corporation having its principal place of business in another
State and engaged in many States, including Massachusetts, in a sales
financing business dealing wholly with intangibles failed to sustain its
burden of showing that the Commissioner of Corporations and Taxa-
tion, in calculating its 1955 corporate excise, improperly determined the
value of its intangible assets "employed in . . . business within" Massa-
chusetts for the purposes of G. L. c. 63, § 30, cl. 4, by applying the
formula set forth in § 38, although that formula was not in 1955 spe-
cifically prescribed for the purposes of cl. 4, or that there was im-
propriety in the resulting taking into account of intangibles located
outside Massachusetts as constituting a material factor in enabling the
corporation to do the business it did in Massachusetts.  [508–510]

APPEAL from a decision by the Appellate Tax Board.

*Albert L. Hyland* for the taxpayer.

*Herbert E. Tucker, Jr.,* Assistant Attorney General, for
the State Tax Commission.

WHITTEMORE, J.   The appellant (Allied) appealed to the
Appellate Tax Board (the board) from the refusal of the
State Tax Commission to abate a corporate excise tax as-
sessed against it for the year 1955.   The board decided that
the refusal to abate was right.   Allied's appeal to this
court presents the issue whether error was shown in respect
of the action of the Commissioner of Corporations and Tax-
ation in determining for purposes of G. L. c. 63, § 30, cl. 4,
and § 39, the amount of a foreign corporation's intangible

assets employed in any business within the Commonwealth by applying the formula which is prescribed by G. L. c. 63, § 38, read with § 41, for the determination of that part of the net income of a foreign corporation derived from business carried on within the Commonwealth.

Statutory authority to use such formula for this purpose was given for the first time by St. 1960, c. 548, § 3.

The statutes in 1955 provided as. follows:

(G. L. c. 63, § 39)    "Except as otherwise provided herein, every foreign corporation shall pay annually . . . an excise equal to the sum of the following . . .: (1) An amount equal to five dollars per thousand upon the value of its corporate excess employed by it within the commonwealth . . . (2) An amount equal to two and one half per cent of its net income determined . . . in accordance with the provisions of this chapter"; (G. L. c. 63, § 30, Definitions) "When used in this section and sections thirty-one to fifty-two, inclusive, the following terms shall have the following meanings: . . . 4. 'Corporate excess employed within the commonwealth,' by a foreign corporation, except as hereinafter provided, such proportion of the fair value of its capital stock on the last day of the taxable year . . . *as the value of the assets,* both real and personal, *employed in any business within the commonwealth on that date, after deducting therefrom the value of (a) and (b) following, bears to the value of the total assets of the corporation on said date:* (a) Works, structures, real estate . . . [and other items] owned by it within the commonwealth subject to local taxation, except such part of said real estate as represents the interest of a mortgagee.   (b) Securities [with stated exceptions] held in the commonwealth, the income of which, if any, if received by a natural person resident therein, would not be liable to taxation . . .. *In determining the proportion of assets employed within the commonwealth, the commissioner may include such bank deposits in other states as are employed principally in the conduct of the business in the commonwealth . . ."* (emphasis supplied).

Amendments in 1956 and 1958 (St. 1956, c. 550, § 2; St. 1958, c. 679, § 2) did not change the wording italicized

above.   Statute 1960, c. 548, § 3, rewrote subsection (b) to provide for the deduction of "the cost" of tax exempt securities, held in the Commonwealth, with stated exemptions; omitted the provision, italicized above, in respect of "bank deposits in other states . . . employed principally in the conduct of the business in the commonwealth"; and added this paragraph: "The proportion of intangible assets employed within the commonwealth shall be such proportion of the total intangible assets of the corporation on the last day of the taxable year as its net income attributable to business carried on within the commonwealth, as determined under the provisions of section thirty-eight of this chapter, bears to its total net income allocable under said section, to the extent that such proportion fairly represents the amount of its intangible assets employed within the commonwealth."

The board found, inter alia, these facts: Allied is a Delaware corporation, with a principal place of business in California.   It is authorized to do business in forty-four States and has thirty-six offices in twenty-six States including Massachusetts.   Allied's business is sales financing.   It deals wholly with intangibles.   It buys and discounts the instalment notes of customers of sellers of lumber, carpets, furniture, and heating and plumbing supplies.   The seller submits the buyer's application for credit to Allied and, if Allied approves, the buyer signs a note to the seller who indorses it without recourse to Allied in exchange for Allied's check.   Allied sets up an account receivable and discounts the note with a Boston bank, but Allied "sees to it that the note is paid."   A ledger card reporting each transaction is sent to Allied's Los Angeles office.   The Boston bank sends to that office a check for all the notes sold to it so that Allied's Boston office "never sees or holds in Massachusetts the proceeds of all the notes it sells to the Boston bank."   The Boston office "services six New England States and upper New York State."

Allied's sole witness was the manager of its Boston office since July, 1956, who for fifteen years had worked for Allied in Portland, Oregon, Salt Lake City, Utah, and Boston.

When asked whether and how moneys paid directly to Los Angeles by the Boston bank were credited to the Boston office he replied, ''Well, there is an account but I don't — we are not acquainted with the balances or anything in this office.'' He did not know whether Los Angeles ever transferred funds to the Boston office. That office had a line of credit with the Boston bank which was established by the general office and witness assumed its basis was ''on our net worth of the company.''

In 1955, the gross income of the Boston branch was $102,600, or about ninety-five per cent of the figure ($107,664.33) which Allied reported in its return for 1955 as its Massachusetts intangibles on December 31, 1955. ''On the national level,'' by contrast, the corresponding figures were: gross income of $8,102,000, about twenty-five per cent of total intangibles of $31,336,123.85. Allied's manager, the board found, was unable to explain this great disparity.

Allied's 1955 return, for computation of that part of the excise tax which is based on the corporate excess employed within the Commonwealth, listed ''actual Massachusetts intangibles'' as follows:

| | |
|---|---:|
| Cash | $ 54,790.04 |
| Accounts receivable | 52,008.06 |
| Notes receivable | 1,014.97 |
| Less: | |
| Unearned Discount | 121.59 |
| Reserve for losses | 27.15 |
| Total | $107,664.33 |

The Commissioner refused to accept this schedule as the only intangibles employed in Massachusetts and used the formula. There is no dispute in respect of the figures used by the Commissioner. The figures needed for the formula were set out in Allied's return to show that part of the excise tax which was based on its taxable net income.

The board appropriately summarized the formula prescribed by G. L. c. 63, § 38, as follows: ''[T]he value of

Massachusetts tangible property is related to total tangible property; Massachusetts wages [inclusive of salaries, commissions or other compensation to employees] are related to total wages [thus inclusive]; and Massachusetts gross receipts are related to total gross receipts. The resulting decimals are averaged and the average decimal is applied to the income to be allocated." By applying this decimal to Allied's total intangibles the Commissioner determined that Allied's intangibles employed in Massachusetts had a value of $403,013. The Commissioner used this figure in the computation under G. L. c. 63, § 30 ("such proportion of the fair value of its capital stock . . . as the value of the assets . . . employed in any business within the commonwealth . . . bears to the value of the total assets . . ."), to determine the corporate excess employed within the Commonwealth taxable under c. 63, § 39, at $5 per thousand.

1. The use by the Commissioner of a formula not specified by G. L. c. 63, § 30, cl. 4, did not violate the statute. It was necessary that he determine "the value of the assets, both real and personal, employed in any business within the commonwealth." The statute did not tell him how to do this. It specified certain property situated within the Commonwealth which must be excluded, and one kind of intangible property situated without the Commonwealth which might be included. It did not in terms restrict the meaning of assets "employed in any business within the commonwealth" to assets physically or legally situated here. In context, we think, with the board, that the permission to include foreign bank deposits locally used is significant as recognition that intangibles situated away could be used locally for purposes of the statute, rather than as an exclusion of all foreign intangibles except those mentioned.

In *Atlantic Lumber Co.* v. *Commissioner of Corps. & Taxn.* 292 Mass. 51, 53, affd. 298 U. S. 553, this court said of this tax: "It is measured by property and net income fairly attributable to the business done within the Commonwealth. It is an excise for the commodity or privilege of having a place for the transaction of intrastate business

in Massachusetts with the protection of our laws and the financial, commercial and other advantages appertaining thereto.''

The findings show that in such a business as Allied's the out-of-State intangibles may have very important uses within the Commonwealth. We conclude that the General Court did not intend to exclude such important assets from assets ''employed . . . within the commonwealth.''

Legal situs of intangibles is, to a degree at least, determinable in the light of the purpose of the determination. *National Leather Co.* v. *Commonwealth,* 256 Mass. 419, affd. sub nom. *National Leather Co.* v. *Massachusetts,* 277 U. S. 413, 422–423 (capital stock of foreign subsidiaries of a Maine corporation doing business in Massachusetts was assumed to have no situs in Massachusetts for a direct property tax, but the Commonwealth might treat the stock as assets employed by the parent corporation in *its* business within the State for purposes of the excise tax).

A State, in imposing excises, may look to property beyond its borders to get the true value of things within it. *Wallace* v. *Hines,* 253 U. S. 66, 69. *Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Commn.* 266 U. S. 271, 282. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113. *Ford Motor Co.* v. *Beauchamp,* 308 U. S. 331, 336–337. *International Harvester Co.* v. *Evatt,* 329 U. S. 416, 422–423. *State Tax Commn.* v. *John H. Breck, Inc.* 336 Mass. 277.

We construe c. 63, § 30, cl. 4, as drafted in recognition of this principle and as intended to give the Commissioner authority to determine by reasonable and appropriate means the assets of the taxpayer ''employed in any business within the commonwealth'' whatever their legal situs and even though the use is indirect. See *State Tax Commn.* v. *Sears Roebuck & Co., ante,* 471, 474.

2.   Allied has not shown that the use of the formula was unreasonable or inappropriate or that it resulted in a wrong determination of the fact. On the contrary, the evidence tended to show that out-of-State intangibles were important in enabling Allied to maintain the Boston office line of credit

such that it could do business and make profits within the Commonwealth greatly disproportionate to the intangibles attributed thereto by Allied.   The evidence also tended to show that the attributed income had significance as a measure of the effectiveness (and hence of the employment) of out-of-State intangibles in Massachusetts.

The burden is on the taxpayer to show error in the assessment and impropriety in the method used.   *State Tax Commn.* v. *John H. Breck, Inc.* 336 Mass. 277, 299.

3.   Two of Allied's requests for rulings, which the board denied, stated good law, although one of them was ambiguous.   They were:

"1.   A foreign corporation is entitled to compute its corporate excess on the basis of the correct amount of assets actually employed in its Massachusetts business.

"2.   A foreign corporation is not obliged to compute its corporate excess by the application of the statutory formula to its total intangibles."

The findings show, however, that the denial of these rulings was in no respect a basis for the decision.   In the circumstances there was no prejudicial error.

The ambiguity imported into request 1 by the use of the word "actually" to modify "employed" is a sufficient reason for declining to give it.   The board was justified in construing the request as intended to ask a ruling that something more was required than the use of out-of-State intangibles in the way which the board rightly decided brought them within the statutory concept of assets "employed . . . within the commonwealth."

The board stated in its "Findings of Fact and Report" and "Opinion" as follows: The fact that the Commissioner used the formula gave rise to the only issue in the case, that is, Allied challenged the use of the formula "when the corporation alleges it can and does enumerate the exact intangibles so employed and appearing as such in its books"; in view of the facts found the question came down to whether Allied had sustained its burden of proof that the Commissioner had included in his "measure" property not

"fairly attributable to the business done within the Commonwealth"; in the cases cited by Allied there was evidence concerning the nature and use of specific and identified intangibles upon which the board had been able to make findings that specific property which the Commissioner had allocated to Massachusetts was not in fact connected with Massachusetts business; Allied's evidence was almost devoid of help as to the identity, nature, and use of intangibles located outside Massachusetts allegedly improperly included in the Commissioner's measure; Allied had not sustained the burden of showing that intangibles to the value of $107,664.33 were the only ones "fairly attributable to the business done within the Commonwealth"; the formula was fair and appropriate under the facts of the case; the conclusion was that Allied had not been overtaxed.

The decision had nothing to do with the issue raised by request 2, that is, whether the taxpayer was obliged to use the formula in computing its intangibles.   Inferentially, indeed, the decision recognized that the taxpayer may use whatever method it thinks appropriate.   The holding, however, was, and rightly, that the Commissioner may recompute the tax, by a fair and appropriate means, and the consequent assessment stands if not shown to be wrong or superseded by the board's redetermination as in *State Tax Commn.* v. *Sears Roebuck & Co., ante,* 471.

*Decision affirmed.*